## MOUNT v. CHAPMAN.

A executed a note and mortgage to B.   Subsequently, A and B entered into partnership in the livery business.   A was to furnish the stable, hay, and grain, and board B, and B was to attend the stable, the profits to be equally divided, and the share of A was to be applied in discharge of the note.   B received the sum of $396, A's share of the profits of the business, and then, after maturity, assigned the note and mortgage to C.   C brought suit against A for the whole amount.   A plead payment and set-off: *Held*, that A was entitled to the credit of the payment.

In a judgment in a suit on a note bearing an agreed amount of interest, the interest is to be computed and made a part of the judgment, and the judgment should bear the agreed interest.

APPEAL from the District Court of the Seventh Judicial District, County of Napa.

A statement of the facts appears in the opinion of the Court.

*C. Harston* for Appellant.

The decision and judgment are contrary to the evidence in the case.

The evidence of Waterman, Anderson, and Solon Chapman, uncontradicted, established by the admissions of Murphy, that while he was the holder of the note, all was paid but one or two hundred dollars.

The evidence of defendant, Chapman, shows that not less than six hundred dollars was paid to Murphy on the note before assignment.

It requires the defendant to pay interest on a sum of money greater than the principal sum mentioned in the note, at the rate of two and one-half per cent. per month, there being no agreement to that effect.

The appellant insists that a new trial should have been granted, and that the refusal to grant it was error.

*Botts and Sackett* for Respondent.

One or two of the witnesses testified that they had heard the payee and assignor admit that payments had been made upon the note by which it was reduced to the sum of two hundred dollars : but the whole matter is explained by the testimony of Chapman himself, the defendant, which discloses this state of things :   Chapman, the maker of the note, and Murphy, the pay-

ee, became partners in a livery stable. Chapman owned the stable; he was to furnish the hay and grain. Murphy was to attend to the business, and they were to divide the profits. Murphy received the money, and was to keep Chapman's portion of the profits to liquidate the note. Chapman says, in one place, that at one time it was agreed that the note ought to be credited by the sum of $396. But he says afterwards that they could not agree upon the amount, but he does state most distinctly that he and Murphy never did and never could arrive at a settlement of their partnership account.

We contend that until the amount due from one partner to the other had been ascertained and settled, it was analogous to un-liquidated damages, and could not constitute the subject of set-off. The case of Fremont *v.* Coupland, 2 Bingham, 168; 9 Common Law Rep., 531, is exactly in point. This also was a case of stable and horses. The plaintiff sued for rent of stable. The defence was that plaintiff was indebted to defendant for his share of profits, in running a line of coaches. The plaintiff received the fares, and settled with the defendant weekly, the defendant claimed a balance due upon last weekly settlement of $56. Best, Park & Bunough, agreed, unanimously, that there can be no set-off arising out of a partnership transaction, until there has been a final settlement of the partnership account

This decision is in accordance with the plainest dictate of common sense. It is utterly impossible that in this proceeding, to which Murphy is no party, the partnership account between Murphy and Chapman can be adjusted. For what amount, then, is Chapman entitled to an offset? It may be that when the partnership debts are paid, there will be no profits to be divided. At any rate, the adjustment must form the subject of a separate action, and until the balance due Chapman is ascertained, it cannot be pleaded as an offset.

BURNETT, J., delivered the opinion of the Court—TERRY, C. J., and FIELD, J., concurring.

On the fourteenth day of March, 1854, the defendant executed a note and mortgage for six hundred dollars, to Henry Murphy, due on the first day of December following, and drawing interest from date at the rate of two and one-half per cent. per month. On the tenth day of May, 1856, Murphy assigned the note and mortgage to plaintiff. This suit was brought to foreclose the mortgage. The defendant plead payment and set-off. The plaintiff had judgment, and the defendant appealed.

The first material point made by the defendant's counsel is that the Court below erred in not allowing the defendant the benefit of a payment made to Murphy while he was the owner and holder of the note.

It appears that Chapman was the owner of a stable, and that

in the fall of 1855, it was agreed between him and Murphy that Chapman was to furnish the stable, hay, and grain, and board Murphy, and that Murphy was to attend to the stable—the profits to be equally divided between them, and the share of Chapman to be applied in discharge of the note. The stable was attended to by Murphy until March, 1856, during which time he received various sums upon joint account. It does not certainly appear, from the testimony, whether the parties, by their agreement, contemplated any joint expenses to be paid out of the joint fund, or whether the profits to be divided were the net or gross proceeds.

But we think it unnecessary to decide whether they were or were not partners, as between themselves. Conceding that it was a partnership, we think the defendant had the right to a credit upon the note for the amount received by Murphy. There was a special agreement at the time the partnership was formed that the share of Chapman should be applied as a payment upon the note. This condition must have operated upon the minds of both the parties in making the partnership contract. It does not appear that there were any losses incurred by the firm, and it was only necessary to ascertain the amount received by Murphy, as the share of Chapman. The defendant Chapman was made a witness by the plaintiff, and stated that when they looked over their books the last time, about the first day of May, 1856, it was agreed between him and Murphy that the sum of three hundred and ninety-six dollars had been received by Murphy as the property of Chapman, and that the same should be applied as a credit upon the note. That this amount, at the least, was received by Murphy, is clear, from his acknowledgments to other witnesses, to whom he stated that the note was paid except about two hundred dollars. It would seem clear that Murphy alluded to the principal sum of the note, not including the interest. His admission to Chapman, about the first of March, 1856, that he had received as Chapman's portion of the profits between six and seven hundred dollars, was no doubt based upon an incorrect estimate made from memory, and without any reference to the books of the concern.

The counsel for plaintiff has referred us to the case of Fremont v. Coupland, (9 Eng. Com. Law R., 531,) as a case directly in point. In that case it appeared that "the parties had formerly been engaged in running a coach from Bath to London, the plaintiff finding horses for one part of the road, and the defendant for another; and the profits of each party were calculated by the number of miles covered by his own horses. The plaintiff received the fares, and rendered an account to the defendant every week. Upon this weekly account, there was a balance due the defendant of two hundred and fifty pounds. It did not appear, however, that any final account had been stated, or that

the plaintiff had made any promise to pay the balance in question."

It will be seen that that case differs in one very material respect from this. There was, in that case, no promise to pay the balance; while in this it was agreed *in advance* that the amount should be applied as a payment upon the note. It is true, that the parties had several conferences, and made several attempts to settle the partnership business, and that they never did come to a *complete* settlement. The sum of three hundred and ninety-six dollars was admitted by both parties to have been received by Murphy; and the dispute between them was as to a greater amount, Chapman insisting that the credit should be for more than the three hundred and ninety-six dollars, and Murphy contending it should be for that sum and no more. But the fact that the parties had not mutually agreed as to the whole amount received by Murphy before the commencement of the suit, does not defeat the right of the defendant to insist upon a credit for the amount he can show was received by Murphy, under the partnership agreement. The fact that when the partnership was formed it was expressly agreed between the parties that the share of defendant should be applied as a credit upon the note, and that this stipulation entered into and formed a part of the partnership contract itself, would not permit Murphy to defeat this understanding by asigning the note after due. It is competent for parties to make such a stipulation; and this stipulation will be carried out, notwithstanding the general rule of law, that partners cannot sue each other at law, except upon an ascertained balance, and a promise to pay. Under our system, where legal and equitable remedies are administered by the same Court, and often in the same case, there would seem to be no objection to the enforcement of such a contract in a suit upon the note. The objection to the decree, that the interest upon the note was included with the principal, and that the whole amount was allowed to draw the same rate of interest as that stated in the note, is not well taken. This point has been expressly decided by this Court in Guy v. Franklin, (5 Cal. Rep., 416;) Emeric v. Tams, (6 Cal. Rep., 155.)

The second section of the act of March 13th, 1850, to regulate the interest on money, provides that a judgment rendered upon a contract to pay a specified rate of interest shall conform to the contract, and shall bear the interest agreed upon by the parties; and that this rate shall be specified in the judgment. The interest already accrued must constitute a part of the judgment, and, therefore, must draw the same rate of interest as the other part of the judgment. The whole judgment under the provisions of the statute must draw the same rate of interest.

Our conclusion is that the decree be modified by allowing the defendant a credit for the sum of three hundred and ninety-six

dollars, the amount clearly established as having been received by Murphy. The defendant will be entitled to his costs on appeal.