## REYNOLDS, Administrator, *v*. HARRIS.

WHERE a party to a judgment has obtained any advantage through the judgment, he must restore that advantage to the other party, if the judgment be afterward reversed.

If, on sale under judgment, the plaintiff buys in the property, he must restore it to the defendant, on reversal of the judgment.

Otherwise, as to a stranger, a *bona fide* purchaser without notice. He is not within the rule. But to constitute himself such purchaser, he must show that he has paid the purchase money, and also, that he is the purchaser of the legal title, not of a mere equity. And a purchaser at execution sale is not clothed with the legal title, until he receives a Sheriff's deed.

An assignee of a judgment, and of the Sheriff's certificate of a sale thereunder, stands in the same position as his assignor, the plaintiff, after the judgment has been reversed, and the sale will be set aside, and the property restored to the defendant, where no loss or injury will be done the assignee.

A party who appears and contests a motion in the Court below, cannot object, on appeal, that he had no notice of the motion.

The 345th Section of the Practice Act authorizing the Supreme Court, on the reversal or modification of the judgment or order below, to make restitution of the property and rights lost by the erroneous judgment or order, does not exclude the lower Court from exercising the same power.

And the party aggrieved may proceed in the lower Court, by *motion*, against which there seems to be no statute of limitations, there being, in this case, no unreasonable delay.

An objection being taken in this case to a decree as void, because of an excess of jurisdiction in directing two pieces of property, mortgaged by separate instruments, to be sold together, when the complaint did not ask for that relief, it was held, that, the Court having jurisdiction of the question and of the parties, the decree was valid until reversed or set aside.

APPEAL from the Eleventh District.

*John Hume,* for Appellant.

1. Motion was the proper remedy. (*Brown* v. *Frost,* 10 Paige, 243; *Nickoll* v. *Nickoll,* 8 Id. 349; 9 Id. 259; 2 Id. 239; 1 Sim. & Stu. 281; *Merchants' Ins. Co.* v. *Himman,* 3 Abbott, 455; *Ames* v. *Lockwood,* 13 Bow. Pr. 555; *Banta* v. *Maxwell,* 12 Id. 479; *Breese* v. *Busby,* 13 Id. 485; *Lentz* v. *Craig,* 2 Abbott, 294; *King* v. *Morris,* 2 Id. 296; *Stahl* v. *Charles,* 5 Id. 348; *Lefever* v. *Larraway,* 22 Barb. S. C. 167; *Thompson* v. *Mount,* 1 Barb. Ch. 607; see, also, *Groff* v. *Jones,* 6 Wend. 522; *Bixby* v. *Mead,* 18 Id. 611; *Tripp* v. *Cook,* 26 Id. 143; 1 Binney, 61; 2 Con. 139; 13 Johns. 132; Allen on Sheriffs, 188.)

" Irregularities in the sale of lands can only be corrected by the Court from which the execution issues." (*Swiggart* v. *Harber,* 4 Scam. 374.)

2. Respondent appeared and contested the motion, and cannot now object, that he had no notice of it. (*De Boom* v. *Preistly,* 1 Cal. 206.)

I. The sale in question is invalid as to Raun, the plaintiff, in execution.

1. So much of the decree in *Raun* v. *Reynolds* as directed the order in which the property should be offered, and directed the same to be sold *en masse,* was void, on account of the want of

jurisdiction in the District Court to make such order in that case. There was no such relief demanded in the complaint. No Court can determine issues not before it. And any attempt to award greater relief than that demanded, is an excess of jurisdiction— is a proceeding *coram non judice*, and void. (Cow. & Hill's Notes to Phil. Ev. 1021; *Yates* v. *Lansing*, 9 Johns. 431—437; *Horan* v. *Wahranburgher*, 9 Tex. 313; 9 Johns. 431—437; *Grey* v. *Hawes*, 8 Cal. 562; *Am. Ins. Co.* v. *Fiske*, 1 Paige, 95; *Elliott* v. *Piersoll*, 1 Pet. 340; *Wilcox* v. *Jackson*, 13 Id. 511; *Read* v. *Vanderheyden*, 5 Cow. 736, 737; Prac. Act, Sec. 147; *Raun* v. *Regnolds*, 11 Cal.; *Davis* v. *Robinson*, 10 Id. 411.)

2. When a mortgagee under a decree of foreclosure and sale becomes the purchaser of the mortgaged property, enters into possession under such sale, and his decree is afterwards reversed, the mortgagor is immediately remitted to his equity of redemption, and entitled to have the mortgagee account to him, not only for the rents and profits which he actually realized from the property while so in his possession, but also for all that by reasonable diligence and care he could have realized. "If a judgment be reversed on a writ of error, the plaintiff in error is to be restored to all things which he lost by reason of the judgment." (*Cummings* v. *Noyes*, 10 Mass. 433; *Jones* v. *Harker*, 5 Id. 264; *Goodier* v. *Founce*, Brownel & Goldsborough, 107; 2 Bac. Abr. 390; Yelv. 108, 179; Rol. Ab. 778; 4 Cro. Ja. 246; *Byber* v. *Ashby*, 2 Gilm. 152; *Burgh* v. *Burgh*, R. Temp. Finch, 28; *Rollins* v. *Callender*, 1 Free. Ch. 295; *Lansing* v. *McPherson*, 3 Johns. 424; *Simonds* v. *Catlin*, 2 Caine, 61; *Chesterman* v. *Gardner*, 5 Johns. Ch. 29; *Jackson* v. *Caldwell*, 1 Cow. 644; *Tripp* v. *Cook*, 26 Wend. 158; *Lovett* v. *The German Reform Church*, 12 Barb. 83.)

II.   The sale is invalid as against Harris, who stands in no better position than Raun, from whom he bought. Harris is not an innocent third person.

1. Harris, as purchaser, is chargeable with notice of all defects in the title papers of Raun, his vendor. (*Thompson* v. *Blair*, 3 Mur. 583; *Graves* v. *Graves*, 1 A. K. Marsh. 165; 2 Lead. Cases in Eq. 120, and cases cited; *Wilson* v. *Arnold*, 5 Mich. 98; *Morris* v. *Vanderen*, Dall, 64, 67.)

Again: Harris was the purchaser of a mere equity, and was

not a purchaser of the land itself. And the purchaser of a mere equity is in no case protected under the plea of *bona fide* purchaser. (*Knight* v. *Fair*, 9 Cal. 117; *McMillan* v. *Richards*, Id. 365; *Anthony* v. *Wessel*, Id. 103; *Shirras* v. *Craig*, 7 Cranch, 48.) "The protection extended by a Court of Equity to a *bona fide* purchaser belongs only to the purchaser of a legal title, without notice of an outstanding equity. He who purchases no legal title, cannot have this protection." (*Vattier* v. *Hinde*, 7 Pet. 470; *Perkins* v. *Hayes*, 1 Cook, 163; 1 Blacf. 91; *Parsons* v. *Jury*, 1 Yerg. 296; 2 Lead. Cases in Eq. 63, and cases cited.)

Again : When Harris purchased from Raun, Reynolds & Kirk were in possession, and this was notice of all the equities of the latter. (2 Lead. Cases in Eq. 116, 117; Paige, 229, 300; 5 Johns. Ch. 29; 3 Paige, 421; *Brice* v. *Brice*, 5 Barb. 547, 548; *Buck* v. *Halloway's Devisees*, 2 J. J. Marsh. 180.)

2. Harris, in his answer, has not made the averments necessary to support the plea of innocent purchaser for value. He does not deny actual notice of the equities of Appellant. He does not aver payment of the purchase money nor has he proved payment. (*Gallatian* v. *Erwin*, Hop. Ch. 48, 55; *Frost* v. *Beekman*, 1 Johns. Ch. 302; *Murray* v. *Ballou*, 1 Id. 574, 575; *Murray* v. *Finster*, 2 Johns. Ch. 157; *Denning* v. *Smith*, 3 Id. 345; *Gallatian* v. *Cunningham*, 8 Con. 361; *Harris* v. *Fly*, 7 Paige's Ch. 421; Sto. Eq. Pl. Secs. 805, 806; *Snelgrove* v. *Snelgrove*, 4 Dess. 274; 2 Lead. Cases in Eq. 59—83, and cases; *Boone* v. *Chiles*, 10 Pet. 211, 212; 7 Cr. 48; 7 Pet. 271; 1 Cr. 100; 3 Id. 133—135; 1 Wash. C. C. 75; 9 Ves. 33, 34; C. John. 559; 1 Id. 590; 17 Id. 367; 18 Id. 532; 2 Id. Ch. 87—90; 4 B. C. 75; Amb. 589; 4 V. 404, 487; 3 I. C. 583; *Jewett* v. *Palmer*, 7 John. Ch. 65; *Hardingham* v. *Nicholls*, 3 Atk. 394; *Harrison* v. *Southcote*, 1 Id. 538; *Story* v. *Lord Windsor*, 2 Id. 630; *Naus* v. *McPherson*, 7 Mon. 599; *Thomas* v. *Graham*, Walk. Ch. 117; Sug. Vend. 530; *Dugan* v. *Vattier*, 3 Blackf. 245; *Doswel* v. *Buchanan's Ex'rs*, 3 Leigh. 365; *Weed* v. *Mann*, 1 Sum. C. C. 506; *Grimstone* v. *Carter*, 3 Paige, 437; *Holcroft* v. *Hunter*, 3 Blackf. 151.) And, "not having shown that he is a subsequent *bona fide* purchaser, he must stand on the same ground as if the purchaser from the Sheriff had never conveyed." (*Jackson* v. *Cadwell*, 1 Cow. 644.)

*Crockett & Crittenden*, also, for Appellant, discussed the main

propositions of Mr. Hume's brief, citing, in addition: 8 Croke, 96, *b.*; Pr. Act, Sec. 237; *Clark* v. *McElvy*, 11 Cal. 16, and insisting that Harris stood in Raun's position; that, having purchased the decree and the certificate of sale, he assumed Raun's position as creditor, entitled to his rights, but subject to the contingencies of the suit.

*Sanderson & Newell*, for Respondent.

1. The sale in this case cannot be set aside on motion. The authorities cited by Appellant from New York have no application. Under the chancery practice, any person interested could apply, by motion, to have a sale set aside, if improperly made, and a resale made at any time before final confirmation of the Master's report, but not afterwards. (1 Barb. Ch. Pr. 529; 10 Paige, 243.) After such confirmation the purchaser is put into possession. Now, the lapse of six months without a redemption, or a motion to set aside the sale, and the Sheriff's deed, have the same effect here as the order or confirmation in New York, and a motion is not the remedy.

Besides, the motion here is not for a resale, which was the only course under the old system.

2. The Supreme Court alone can entertain any such motion. (Pr. Act, Sec. 345.)

On the merits:

I. The decree in *Raun* v. *Reynolds*, on which the sale was made, was merely erroneous, not void.

Whether a judgment is void or not is a question of jurisdiction only. Where the Court has jurisdiction of the parties and the subject matter, its judgment, whether erroneous or not, is valid and binding until reversed. (*Egerton, Jr.* v. *Hart*, 8 Vt. 207; *Ex parte Kellogg*, 6 Id. 509; *Gorrill* v. *Whittier*, 3 N. H. 265; *Butler* v. *Potter*, 17 Johns. 145; 8 Id. 69; 5 Wend. 170; *Smith* v. *Knowlton*, 11 N. H. 191; *Elliott* v. *Piersol*, 1 Pet. 340; 25 Vt. 342; 3 Ohio, N. S. 494; *Jackson ex dem. Gordy*, 7 Blackf. 391.) That the Court had jurisdiction of the parties here is not disputed. And the fact that the manner of relief granted was not prayed for in the complaint, does not make the decree an excess of jurisdiction. The Court looks to the cause of action stated, to decide

the question of jurisdiction.   (6 Pet. 691 ; 4 J. J. Marsh. 242 ; 2 Wash. C. C. 463 ; 1 Bibb, 342, 402 ; 9 Johns. 239.)

But even if the relief granted was greater than prayed for, the decree would be voidable, not void.   (*Butler* v. *Potter*, 17 Johns. 145 ; *Prigg* v. *Adams*, 2 Salk. 674 ; *Smith* v. *Kun*, 26 Me. 411.) Indeed, a decree good in part and bad in part, as is this decree, cannot be void.   Such decrees are erroneous only.

II.   When a judgment is void, and is reversed on that ground, a sale made under it is also void ; but when the judgment is erroneous only, and is reversed on this ground, then a sale made prior to such reversal is not affected or impaired thereby, and the rule is the same, whether the judgment creditor or a third party has become the purchaser.   (*Woodcock* v. *Bennet*, 1 Cow. 711; 3 Coke, 192 ; *Manning's Case*, 8 Coke, 284 ; 2 Bac. 506 ; *Jackson* v. *Bartlett*, 8 Johns. 361 ; *Jackson* v. *Rosevelt*, 13 Id. 102 ; *Shirley* v. *Wright*, 1 Salk. 273 ; *Farmer* v. *Rogers*, 10 Cal. 335 ; *Darwin* v. *Hatfield*, 4 Sandf. Sup. Ct. ; 1 Sug. Vend. & Purch. 102 ; *Doe ex dem. Noble* v. *Swiggett*, 5 Blackf. 328 ; *Dribler* v. *Barnick*, 4 Id. 339 ; *Parker's Heirs* v. *Anderson's Heirs*, 5 Monroe, 453 ; 4 Bibb, 102 ; *Whitney* v. *Bank of United States*, 13 Pet. 6, page 15 of Story's Opinion ; *Draper* v. *Bryson*, 17 Mo. 2 Bennett, 71 ; *Bank of Kentucky* v. *Vanmeter*, 10 B. Monr. 66 ; *Waters* v. *Morris*, 14 Geo. 323 ; 8 B. Monr. 102 ; *Lovett* v. *German Reformed Church*, 12 Barb. 67, 82, 83 ; *Gray* v. *Hawes*, 562 ; *Do eex dem. Mace*, 2 Carter, 309 ; *Ingram* v. *Belk*, 2 Strobh. 207.)

*Heydenfeldt*, for Respondent.

1.   The reversal of a judgment or decree, is no ground for setting aside a sale of property made under it.   (*Rearden* v. *Lancy*, 2 Bibb, 202 ; *Coleman* v. *Trabue*, 2 Id. 518 ; *Armstrong* v. *Jackson*, Blackf. 210 ; *Darby* v. *Russell*, 5 Hay. 139 ; *Doe* v. *Swiggett*, 5 Blackf. 328 ; *Doe* v. *Natches Co.* 8 S. & M. 197 ; *Brown* v. *Combs*, 7 B. Monr. 318.)

This springs from the policy of the law, which is to sustain judicial sales.   (*Benningfield* v. *Reed*, 8 B. Monr. 102.)   And so, in support of this policy, it has been held that the purchaser is not bound to look beyond the decree or judgment.   (*Grignon*. v. *Astor*, 9 How. 319 ; *Atkins* v. *Kinnan*, 20 Wend, 241 ; *Henry* v. *Ferguson*, 1 Bailey, 512, and cases cited ; *Thompson* v. *Tolmire*, 2 Pet.

157.) And that the purchaser cannot bo defeated, even by show-ing the judgment was paid. (*Dean* v. *Cornell,* 6 Barr, 239; *Reed* v. *Austin,* 9 Miss. 722.) And although the plaintiff be the pur-chaser, he is protected as well as a stranger. (*Ingram* v. *Beek,* 2 Strobh. 207; *Benningfield* v. *Reed,* 8 B. Monr. 102; *Packer's Heirs* v. *Anderson's Heirs,* 5 Monr. 445.)

2. And some cases deny that such a sale can be set aside on motion, or by a Court of Law. (*Reed* v. *Carter,* 1 Blackf. 410; *Giles* v. *Pratt,* 1 Hill, 239; *Gridly* v. *Duncan,* 8 S. & M. 456.) And it cannot be done for any cause which arose subsequent to the sale. (*McCollum* v. *Hubbert,* 13 Ala. 289.)

3. Upon general principles, if the sale were void, then no title passed, and ejectment was the proper remedy. To sustain this motion it must be shown:

1st. That the process of the Court was abused.

2d. That by the abuse the defendant is injured.

As to the first ground, there is no pretense of abuse, because the history of the case shows the sale to have been conducted in strict accordance with the decree.

As to the second, the case not only shows no injury, but there is not even a pretense of injury.

The defendants' petition, in which they have had the opportu-nity to make their case as strong as possible, does not allege that the property would have sold for a higher price, if it had been sold separately; nor that it sold for less than its full value; nor that, if sold over again, it would sell for a higher price.

Counsel here reviewed the authorities cited by Appellant, and contended, that, so far as they apply to a resale on motion, the cases were, where the sale had not been confirmed, or where lots were sold together, contrary to a statute requiring them to be sold separately, and brought a very low price, or where, from the manner of the sale, there was suspicion of fraud in the purchas-er; or, where the parties were infants, and not fairly represented by their guardian, and the price was meager, and the like; and that, so far as they apply to the protection of plaintiff as pur-chaser, either, that the difference in the rights of plaintiff and strangers did not arise in the cases cited, or that the sale was set aside for fraud or other special circumstances, not existing here.

4. Harris does not stand in Raun's position. The reason of the

distinction between parties and strangers, as purchasers at judicial sales, is that on the reversal of the judgment, the " party " loses nothing, being remitted to his original rights, while the stranger loses his money.    But, if, as Appellant contends, this reason is obviated by our statute, which allows the purchaser at the sale to recover back his money from the plaintiff, in case the property is lost by a reversal of the judgment, then Harris is more entitled to protection from the Court, than if he had been the purchaser, because, not being such purchaser, he is not within the statute, and, therefore, could not, by virtue of the statute, recover his money back from the plaintiff, and also, as he merely purchased from Raun the right conferred by the Sheriff's certificate of sale, he stands toward Raun as a purchaser, with his eyes open, and could not recover from Raun the money he paid him for the purchase.    So that if the sale is set aside, Harris loses his property and loses his money.    He has no redress whatever, against his vendor.    And if it be replied to this, that he may in equity have the benefit of Raun's judgment, the answer is, that the judgment stood on the record for twelve months as satisfied, and there was abundant time for the rights of other innocent purchasers.

Again, having owned the property during that time as proprietor, there is no mode in which he can be compensated for the money, labor, and personal attention, which he has expended upon the property.

BALDWIN, J. delivered the opinion of the Court—COPE, J. and FIELD, C. J. concurring.

This was a petition in the District Court for El Dorado County. The facts upon which the decision rests are as follows : In January, 1857, Edward T. Raun, being the owner of two undivided fifths of the South Fork Canal, situated in El Dorado County, sold and conveyed the same by deed to Walter W. Reynolds, for the agreed price of thirty-two thousand dollars, for which sum Reynolds gave Raun his note, payable in six months.    To secure the payment of this note, Reynolds executed to Raun a mortgage upon three undivided fifths of said canal—the same being the two-fifths sold by Raun, and an additional fifth, of which Reynolds was the owner at the time of this transaction.

The note not being paid at its maturity, Raun brought his action to foreclose. Before the time for answering to this action had expired, Reynolds obtained from Raun a stay of proceedings for sixty days, in consideration of which Reynolds gave Raun additional security by procuring John Kirk to join with him in executing a mortgage to Raun of their three-fifths of the Gold Hill Canal, situated in El Dorado County, and connected with the said South Fork Canal by Hangtown Creek, through which it was mainly supplied with water by the last mentioned canal, the owners of both canals being the same, with the exception of Kirk. Reynolds and Kirk owned the three-fifths of the Gold Hill Canal jointly. For the same consideration—to-wit: a stay of proceedings for sixty days—Reynolds procured Kirk and wife to execute to Raun a mortgage upon their homestead in the city of Placerville.

At the expiration of the sixty days, Raun filed a supplemental complaint, making Kirk and his wife parties, and including the two mortgages last mentioned, and asking a foreclosure of all three of the mortgages, and a sale of all the mortgaged property. This supplemental complaint was duly served upon Reynolds, Kirk, and Kirk's wife; all three of the defendants made default.

The note sued on drew monthly compound interest, and the Court rendered a judgment for the amount of the principal and interest, at the date of the judgment, and directed that the judgment should draw the same rate of interest which the note drew, to wit: monthly compound interest.

The Court directed the Sheriff, in the decree, to first offer for sale the property covered by the first mortgage, to wit: the South Fork Canal property, being the separate property of the defendant, Reynolds; but to receive no bid less than the amount of the judgment and costs; and if no bid was made sufficient to satisfy the judgment and costs, then to offer for sale both the canals together; and if they failed to sell for enough to satisfy the judgment, then to proceed to sell the homestead property. This decree was rendered on the 11th day of February, A. D. 1858.

On the 8th day of March, A. D. 1858, the property was sold by the Sheriff, in pursuance of the directions contained in the decree. The South Fork Canal property was first offered for sale—

no bid being made sufficient to satisfy the judgment—the South Forth Canal property and the Gold Hill Canal property were offered for sale together, and were sold to Raun, he being the highest bidder, for the sum of thirty thousand dollars. The homestead property was then sold to Raun for the sum of two thousand dollars, leaving a part of the judgment still unsatisfied.

On the 30th day of March, A. D. 1858, Raun sold and assigned his judgment, and all his interests and rights as purchaser, to the Respondent, L. B. Harris, for the sum of thirty-six thousand dollars. At the time Harris purchased, no steps had been taken by Reynolds and Kirk, or either of them, to review the judgment or decree, by appeal, or otherwise—nor any steps to stay or set aside the sale.

Subsequent to Harris' purchase, to-wit: on the 5th and 12th of April, A. D. 1858, Reynolds and Kirk brought separate actions in the nature of bills of review, against Raun, each concluding with a prayer to set aside the sale. To each of these actions Raun demurred; his demurrers were sustained in the District Court, and Reynolds and Kirk appealed to this Court.

On the 26th day of June, A. D. 1858, Reynolds and Kirk appealed from the judgment and decree in *Raun* v. *Reynolds, Kirk & Wife*, of the 11th day of February, A. D. 1858.

At the July Term of this Court, 1858, all three of these appeals came up for hearing. The two first, to-wit: the bills of review, were dismissed by this Court, upon the ground that a party cannot prosecute a bill of review and an appeal at the same time. In the other, this Court held that the judgment, so far as it drew compound interest, was erroneous, and directed the same to be modified accordingly, and that the decree, so far as it directed the two canals to be sold together, was erroneous, and reversed the same in that particular, but in all other respects affirmed the judgment and decree of the Court below.

On the —— day of April, 1858, Harris brought an action against Reynolds, to obtain a receiver of the rents and profits pending the time for redemption. In this action the District Court compelled Reynolds to pay the proceeds of the canals into Court during the time allowed for redemption; and after the time for redemption had expired and Harris had obtained his deed, the Court rendered final judgment in favor of Harris,

and directed that the money in Court be paid over to him. From this judgment Reynolds appealed to this Court, and this Court, at its April term, 1859, affirmed the judgment of the Court below.

On the 18th day of September, 1858, the time for redemption having expired, and no redemption having been made, and a deed having been executed to Harris, an application, upon due notice, was made by him to the Court below, for a writ of assistance, which was granted, and under it Harris was put in possession, and has since been, and still is, in possession of the canals. As against the homestead Harris has not yet enforced his writ.

Subsequently to the decision of this Court, declaring the decree of the sale to be erroneous, Reynolds and Kirk made a motion in this Court to have the sale set aside, and to be restored to the possession of the property under the 8th Section of the "Act concerning the Courts of Justice of this State and Judicial Officers," passed May 19th, 1853.

This motion was not entertained by this Court, for the reason, that the motion was made too late, and should have been made at the hearing of the case.

Subsequently, to-wit: on the 17th day of March, 1859, the same motion was made in the Court below and denied. From the order denying this motion the present appeal has been taken.

Pending these various proceedings Walter W. Reynolds died, and his administrator, James W. Reynolds, has been substituted as a party in his place.

The questions involved in this record have been argued with ability and learning, both at the bar and in the briefs of the counsel.

1. It is insisted, on the part of the Respondent, that the defendant, Harris, the party really interested, was not served with process or other notice; but the answer is, that he appealed and contested with the plaintiff in the motion, and this is sufficient to bind him, whether he had or had not notice.

2. It is also urged that there was no power in the Court below to grant the relief prayed, but that the power is by statute given to the Supreme Court alone to award restitution. But neither

the language nor the reason of the provision cited gives the exclusive power to this Court so to decree or order. It would be unreasonable so to hold, for the possession may not be changed at the time of the action of this Court, and the universal rule is that a power given to one Court to do an act is not in exclusion of the Court before possessing the power from acting in respect to the particular matter.

3. It is again said that the proper form of proceeding is by action in the usual form and not by motion, but the authorities seem to be the other way, and we see no reason, why, in this class of cases, there should be an exception to the usual and recognized authority of the Courts to prevent or to remedy an injurious and illegal execution of the process of its officers. (See the following cases in which this authority of the Court has been upheld; 3 Johns. Ch. 474; 5 Id. 29; *Mobile Cotton Press* v. *Moore & Magee*, 9 Port. 679; 2 Yeates, 516; 1 Serg. & R. 2 Wend. 260; 7 Id. 88; 7 Gill & J. 512; 7 J. J. Marsh. 625.)

4. It is, moreover, argued, that this motion comes too late. We see no statute of limitations in such instances, and the Appellants have shown that, in consequence of various obstacles not within their control, there was no unreasonable delay in making the motion.

Having disposed of these technical objections, we are brought to the merits of the controversy.

There is no force in the point made by the Appellants that the judgment reversed by this Court is void on its face, because the Court rendering it had no jurisdiction. The Court below had jurisdiction of the question and the parties, and whether its judgment was legal or illegal, proper or improper, it was valid and binding until reversed or set aside.

But it has been seen that this judgment was reversed as to the mode of sale of the mortgaged premises. Before this reversal the premises had been sold. At that sale the plaintiff, Raun, became the purchaser. A short time afterward he sold the purchased interest and assigned the judgment to Harris. And now, the real question is, can this purchase stand, or should it be set aside? The ground of this motion is not that the sale was irregular or fraudulent. The ground is that the sale should not have been decreed on the prescribed terms and in the prescribed

mode. We take the decision of this Court in *Raun* v. *Reynolds*, (11 Cal.) as conclusive of the law upon this question. We see no difference between the total reversal of the judgment in that case, so far as this question is concerned, and a partial reversal, for the effect of the reversal was to declare that this sale, as ordered by the decree of the Court below, was improperly so ordered, and that the sale should have been made by the law of the land in a different manner in substance and in fact. Two questions then arise :

1. What is the effect of the reversal of a judgment upon a purchase made in pursuance of its terms by the plaintiff in the judgment; and—

2. Does Harris, the assignee of the judgment and of the purchaser's rights in the purchase and the purchased property, stand in any different position ?

It is hard to see why a man buying in another's property sold under a judgment rendered according to the forms of law, but against the principles of law, should obtain any advantage from his own judgment thus improperly obtained. It is true that as the error was the .error of the Judge, he should not lose by it; but it is not so clear that he should make a profit by it. It is equally clear that the defendant should not suffer by any such improper judgment, if it can be avoided in consistency with a due respect to the rights of others. It would appear to be exact equity to set aside acts which have been illegally done, if this can be without injury to third persons; so that all parties whom the proceedings affect stand in the same position after as before the acts so done. How could Raun insist that his judgment, rendered against law, should be enforced, when the error can be corrected without the slightest injury to him, and when he is reinstated to all the rights which he had before its rendition ?

Accordingly, the principle has been declared in cases innumerable, that when a judgment is reversed, the defendant is to be restored to all things which he has lost by the judgment. (See *Jones* v. *Harker*, 5 Mass. 264; *Cummings* v. *Noyes*, 10 Mass. 433.) In *Jackson* v. *Cadwell*, (1 Cowen, 644,) the Court say, the same reasons of policy which secure to an innocent purchaser a valid title do not exist when the judgment creditor becomes purchaser, and it would be the hight of injustice to allow the party guilty

of the irregularity to take advantage of it. It is true, that in that case the sale was set aside for errors in conducting it, but the principle would apply to an erroneous judgment, procured by the instrumentality of the plaintiff or his Attorney.

So in the case of *The Bank of the United States* v. *The Bank of Washington*, (6 Pet. 19,) it is said : " The reversal of the judgment gives a new right or cause of action against the parties to the judgment, and creates a legal obligation on their part to restore what the other party has lost by reason of the erroneous judgment, and as between the parties to the judgment there is all the privity necessary to sustain and enforce such right."

Authorities might be multiplied indefinitely, to the same effect, but it is unnecessary. The current of authority, broken by only a case or two, goes directly to the point, that a party obtaining through a judgment, before reversal, any advantage or benefit, must restore what he got to the other party, after the reversal.

A different rule, however, obtains as to a stranger. An innocent purchaser, without notice, is held not to be within the rule, but is protected, because otherwise, as the old authorities say, he would lose both the property he bought and the price. Another reason is, that a contrary rule would discourage bidding at judicial sales. The real question now arises : Is Harris within this protection ? He claims it, because he is the assignee of this judgment, and of the Sheriff's certificate. He must claim to be a *bona fide* purchaser without notice. But to constitute this character, he must show that he has paid the purchase money. (See the numerous cases cited in the Appellant's brief,) More than this, he must show that he is the purchaser of the legal title, not of a mere equity; and a purchaser at execution sale, until he receives the Sheriff's deed, is not clothed with the legal title, but has only a lien or equity. (9 Cal. 296; Id. 103.) It is urged that, therefore, Raun was only the holder of an equity, and that Harris, by the assignment, cannot claim any higher rights, under these circumstances, than his assignor; and that when Harris bought of Raun he took Raun's claim to a title subject to the defendant's right of appeal and reversal. And it is argued that if this were not so, it would follow that a plaintiff might purchase during, or before, an appeal, and afterward trans-

Reynolds *v.* Harris.

mit to an assignee a title to the premises, which would defeat the rights of the Appellant if he succeeded in the appeal.

Nor is the case altered, even if the answer of the Respondents be well founded, that this certificate, or the purchase it represents, is not a mere equity in the sense of the authorities, but is an inchoate legal title, which, after the lapse of the period of redemption, ripens into a full and complete legal estate in the premises sold and purchased. It is not necessary to pass on this question; for Harris was as well the assignee of this certificate as of the judgment. He occupied the position of Raun fully and entirely. He stood precisely as Raun stood, with all his rights, as well in the judgment and debt as in the purchase. The reason of the rule which protects the purchase of a stranger, as we have intimated, is, that he might lose his money if not protected; but here there is no danger of loss; for the judgment is restored to its full force, unaffected by any payment or credit made on it by the sale or proceeds of sale. By the force of this assignment, as he says himself, he became entitled to all the rights; in fact, he represented fully the entire claim of Raun. The primary right of Kirk and Reynolds, as we have shown, was to be reinstated after the reversal of the judgment, to their former condition. The only obstacle to this in equity, was the consequence that an innocent third party might suffer; but here this obstacle does not exist. Full justice may be done to all parties by giving all the rights for which they contracted, and to which they are in law and equity entitled. Again, the assignee of the certificate does not come within the protection of the rule in favor of the purchaser at the Sheriff's sale—the purchaser being a stranger to the execution. The policy of the rule was to encourage bidding at judicial sales, where parties might have little or no opportunity to inquire into the regularity of the anterior proceedings. But, as we have said, this rule does not apply, at least to the same extent, to the plaintiff in execution; nor does it apply to his assignee. The grantee is charged with notice of the deeds and documents from which he deraigns his title. When he purchases from the plaintiff in the execution, he is presumed to know the course of the proceedings and state of the record from which the title of his grantor proceeded, and he is presumed to know, too, that the right of the defendant is to take an appeal

44

Reynolds *v.* Harris.

within the statutory period, and also the consequences of the successful prosecution of this right; and he must be supposed to purchase with reference to these things. But without affirming, for it is not necessary to do so in this case, that in every case the grantee of the plaintiff in the execution stands in this position, we think it clear that when the double character of judgment creditor and assignee of the certificate is in the same person, so that the setting aside of a sale would work no real hardship, but the parties can stand upon their original equities, then a Court of Chancery will set aside the sale, for that would be giving effect to the defendant's right to be reinstated to the position, in which, by law, he was entitled to stand, without injustice or injury to any one. Or to state the proposition in a different form: In this case, Kirk and Reynolds were entitled to have their property sold in a particular way; of this right they were unjustly deprived, to their injury; but they can now be restored to their original right, and this without loss or injury to any one; this being so, we can conceive of no principle governing Courts of Justice which denies their claim to such obvious equity.

Harris stands substantially in the place of Raun, for on setting aside this sale, he will be entitled to enforce the judgment, as modified by this Court, for the full amount of principal, and interest, and costs, and the credit given on the former sale will be vacated. He thus is made whole, while no injustice is done to the defendants in the judgment. Whether Harris, after going into possession, and before the setting aside of the sale, is accountable for rents and profits, is a question which has not been fully argued, and which is not necessary to be now determined.

Decree reversed and cause remanded for a judgment in pursuance of the principles of this opinion.