[No. 3,642.]

# J. S. POLACK AND MARY POLACK, HIS WIFE, *v.* JAMES SHAFER, CLINTON GURNEE, WILLIAM S. CHAPMAN, THOMAS W. MOORE, AND HORACE TEMPLETON.

WRIT OF RESTITUTION IN FORCIBLE ENTRY.—If a plaintiff, in forcible entry and detainer, recovers judgment, and is placed in possession of the premises by a writ of restitution, and the judgment is afterwards reversed by the Supreme Court, the Court below should restore the defendant to the possession.

MISJOINDER OF CAUSES OF ACTION IN FORCIBLE ENTRY.—A count for a cause of action, under the Forcible Entry and Unlawful Detainer Act, cannot be joined in the same action with a count for holding over as a tenant of the plaintiff, contrary to the terms of a lease.

LANDLORD CANNOT MAINTAIN FORCIBLE ENTRY. — The landlord cannot maintain forcible entry or unlawful detainer for an entry made upon the demanded premises after his tenant has entered into possession under a lease.

LANDLORD CANNOT MAINTAIN UNLAWFUL ENTRY.—If an unlawful entry is made upon the possession of the owner, but when he demands a surrender, the right to the possession has passed from him to his tenant to whom he has made a lease, the landlord cannot maintain unlawful detainer.

COMPLAINT IN FORCIBLE ENTRY.—The fraudulent acts which may be alleged, under the fifth section of the Forcible Entry and Unlawful Detainer Act, do not constitute a cause of action, but merely go to the enhancement of damages when a cause of action is made out under the other sections of the Act.

COVENANT ON PART OF LESSEE IN A LEASE.—When a lease is made of the entire premises constituting a hotel, and the land surrounding the same, and a covenant on the part of the lessee is inserted, that the lessor may retain and occupy a room in the hotel, and board there, this covenant is not a reservation of the room from the operation of the lease, and for a forcible entry into this room the lessee alone can complain.

APPEAL from the County Court of the City and County of San Francisco.

The demanded premises are in Sonoma County, and consist of six hundred and forty acres of land located on the north and south banks of the Pluton River, or Sulphur Creek. The celebrated Geyser Springs, and the Geyser

Springs Hotel are on the property.   The plaintiff, Mary Po-
lack, purchased the land from the State as a part of the five
hundred thousand acres granted to this State by the United
States, and obtained a certificate of purchase on the 30th
day of December, 1862.   James Shafer, one of the defend-
ants, leased the premises from the plaintiffs, in 1866, and
continued their tenant until December 31st, 1869.   On the
1st day of January, 1869, they executed to him a written
lease, to expire December 31st, 1869, he agreeing to pay
twelve hundred dollars as rent, and board them, and allow
them to select and occupy a room.   In November, 1869, the
furniture in the hotel, which belonged to Shafer, was attached
at the suit of Goodwin & Co., and others; and Shafer, at the
Sheriff's request, to avoid the necessity of removing the
goods, gave him the keys of the hotel, and allowed him to
take possession and put in a keeper.   On the 11th day of
December, 1869, the plaintiff, J. S. Polack, gave Susenbeth
a lease of the property for the term of one year from the
1st day of January, 1870, containing the covenant mentioned
in the opinion, and on the thirteenth of the same month,
J. S. Polack gave him a power of attorney to enter upon
and take possession of the property ; and on the same day,
Polack and Susenbeth entered into an agreement by which
the former was to take possession of the property and hold
it for the latter until the 1st day of January, 1870, when the
lease between them went into effect.   Shafer had failed to
pay rent, according to the terms of his lease, and Polack
claimed that he had a right, under the covenants of the
lease, to take possession.   Shafer, when he gave the Sheriff
the keys, left the property.   Susenbeth went to the hotel on
the 29th of December, 1869, and it was arranged between him
and the Sheriff's keeper that Susenbeth might have posses-
sion of the property, but the Sheriff might continue to keep
the goods attached in the house.   This was about noon of the
twenty-ninth.   On the thirty-first, about two o'clock P. M.,

Shafer arrived at the hotel; and in the evening, about nine o'clock, defendants Moore and Templeton arrived at the hotel, and Shafer said they were his lawyers. They took rooms and got supper. Defendants Gurnee and Chapman arrived about the same time, and also occupied rooms and took supper. About ten o'clock P. M., as all were in the parlor, Gurnee told Susenbeth he owned the property, and that he had come there to take possession, and that he had a patent from the United States for the same. Susenbeth replied that he was in possession for Polack. Gurnee replied that Susenbeth's presence was embarrassing, and the latter, in answer, said that Gurnee's presence was embarrassing. The parties smiled and retired to bed. Up to this time, the Deputy Sheriff had kept the keys of the hotel. There was a room in the hotel, next to the parlor, which the plaintiffs had occupied when at the hotel. Susenbeth had the key of this room. It was number thirty-two. On the second of January, Shafer, in the presence of the other defendants, asked Susenbeth for the key of this room. He refused to give it up, and went into the room and locked himself in. The defendants then forced open the door and took the furniture out and placed it in the front yard. This furniture was not under attachment, and belonged to the plaintiffs. Susenbeth was then told that if he would acknowledge he was dispossessed, he might put the furniture into the house. He did so, and the furniture was returned to the house. On the morning of the fifth Susenbeth left. On the eleventh day of January the plaintiffs demanded possession, and then brought this action. The complaint alleged that on the 30th day of December, 1869, defendant Chapman, as the attorney in fact of one Freniere, executed to Chapman a deed of the quarter section on which the hotel was built.

In the fourth count of the complaint, a conspiracy was alleged between the defendants to procure possession of the

property; and it was averred that their acts in obtaining possession were in pursuance of this conspiracy.

The other facts are stated in the opinion.

*J. W. Winans*, for Appellants.

The plaintiffs were in peaceable and actual possession of the premises on the 31st December, 1869, and from the twenty-ninth of December, and so continued until forcibly ousted therefrom by defendants.

The power authorizes Susenbeth to hold possession for plaintiffs until "the 1st day of January, 1870—that is, until the entry under lease of J. C. Susenbeth"—and, therefore, by its own terms, gave a possession different from that authorized by the lease. (*Minturn* v. *Burr*, 16 Cal. 107.)

The entry of the defendants, under the circumstances, was forcible. (*Valencia* v. *Couch*, 32 Cal. 344, 345, 346; *Rex* v. *Stark*, 3 Burrows, 1702; *Berry* v. *Williams*, 1 Zabriskie, 427, 428; *State* v. *Caldwell*, 2 Jones' Law, N. C., 468, 471.)

Whether defendants' entry, on the thirty-first December, constituted an entry by force, or any kind of violence, or circumstances of terror, within the meaning of the statute, was a question for the jury and not for the Court, under the evidence; and the Court erred in taking the case from the jury by granting a nonsuit. (*Hendrickson* v. *Hendrickson*, 7 Halstead, N. J., 202; *Dennison* v. *Smith*, 26 Mo., 5 Jones, 488; *Davidson* v. *Phillips*, 9 Yerger, Tenn., 96.)

Susenbeth never had any possession in himself, under either the power or the lease, for when the term demised by the lease began defendants were in possession, and he could not oust them, and, consequently, could not make entry under that; while his possession for plaintiffs under the power did not last merely until the demised term began (January first), but, as the power expressly states, "until

the entry under lease of J. C. Susenbeth;" and Susenbeth never entered, or had the ability to enter, for himself, under that. (*Frazier* v. *Hanlon*, 5 Cal. 157; *Willard* v. *Warren*, 17 Wend. 264; *Burt ads. The State*, Coms. R., S. C. 489; *Pennsylvania* v. *Robinson*, Addison, Penn. 17; *Valencia* v. *Couch*, 32 Cal. 345; *Buel* v. *Frazier*, 38 Cal. 696.)

The covenant in the lease, reserving to plaintiffs this particular room, which is expressly specified therein, and in regard to which it is provided by the covenant that plaintiffs shall retain and occupy the same, is not a personal covenant. A personal covenant in a lease is one that exists in contrast to a covenant which runs with the land. The one charges the land; the other does not charge it, but is a mere chose in action. The character of each is defined, and the distinction between them thus shown, in Taylor's Landlord and Tenant, Sec. 260, p. 190, 5th edition, 1869; *Tallman* v. *Coffin*, 4 Comstock, 134.

*George A. Nourse*, for Respondents.

There is no evidence to show that plaintiffs ever had any interest in, or possession of, the premises mentioned in the complaint, or any part thereof. There is no evidence in the case tending to show a forcible entry upon the possession of plaintiff, nor of any forcible detainer of the premises whatever. An action of forcible entry and detainer cannot be maintained, except by the party whose actual possession has been entered upon, forcibly or unlawfully. If the alleged forcible entry is made upon the possession of a tenant, he, and not the landlord, must bring the action of forcible entry and detainer. (*Treat* v. *Stuart*, 5 Cal. 113.)

Where the owner of land has a right of action for forcible entry upon or forcible or unlawful detainer of such land, and makes a lease (whether before or after such entry, etc.) of said land, which lease goes into effect after such right of action accrues, he cannot, during the term created by such

lease, maintain an action based upon such forcible entry or forcible or unlawful detainer. (*Kile* v. *Tubbs*, 32 Cal. 332.)

The forcible entry and detainer statute is leveled at acts, not at intentions or preparations. And even if preparations and intentions culminate in such acts as are prohibited by the statute, the injured party has redress only against the acts, as of the time when they are committed.

The power of attorney expired, by its own limitation, when the term created by the lease began. Its grant of power is only " until the 1st day of January, 1870—that is, until the entry under lease of said J. C. Susenbeth."

The lease from J. S. Polack leases the whole of the Geyser property, six hundred and forty acres in all, without reservation or exception, to J. C. Susenbeth.


By the Court, NILES, J.:

This action was brought under the Forcible Entry and Detainer Act of 1866, to recover the possession of certain premises known as the Geyser Springs Hotel property, in the County of Sonoma. A judgment of nonsuit was rendered against the plaintiffs, and from the judgment, and from the order overruling plaintiffs' motion for a new trial this appeal is taken.

Before considering the motion for a new trial upon the merits, we shall notice several points made by the counsel for appellants upon their appeal from the judgment.

1. Errors are claimed in the orders of the County Court granting to the defendants a writ of restitution, and refusing to set this order aside upon motion of plaintiffs.

It seems that upon a former trial of this cause the plaintiffs recovered judgment for a restitution of the premises and upon this judgment a writ of restitution was issued and executed. Upon appeal to this Court the judgment was reversed and the cause remanded, with directions to the Court

below to sustain defendants' demurrer to certain counts of the complaint. Upon filing the remittitur in that Court, an order was obtained for a writ to restore the defendants to the possession of the property.

The order was one proper to be made. Upon a reversal of a judgment in the appellate Court it is right that the appellant be placed as nearly as may be, without interfering with the acquired rights of third parties, in the same position which he occupied when the erroneous judgment was rendered. (*Reynolds* v. *Harris*, 14 Cal. 679.)

This was substantially the effect of the order in question.

2. The Court did not err in refusing to allow the plaintiffs to file their proposed amended complaint. There was an evident misjoinder of causes of action. The first five counts were framed under the Act of April 2d, 1866, concerning forcible entries and unlawful detainers. The sixth was framed under the Act of April 27th, 1863, commonly known as the landlord and tenant Act, and charged an unlawful holding over by the defendants as tenants of plaintiffs, after expiration of the lease and notice to quit. Causes of action under these several Acts are distinct and different, both as regards the ground of action and the mode of procedure. In the one case there must be proof of the forcible taking or withholding of possession, and the force is the gist of the action. There is nothing in the nature of a contract between the parties to the proceeding. In the other the element of force is entirely wanting. The entry was lawful and the detention peaceable. The statute merely provides a summary remedy for the breach of a special class of contracts. The incompatibility of the two causes of action is obvious when we consider that a landlord who should make a forcible entry upon his own land after the expiration of his tenant's term, and due notice to quit, would be liable to an action at the suit of the tenant under the forcible entry Act of 1866, while the same facts, without the forcible entry,

would give the landlord an action against the tenant, and restitution of the premises, under the landlord and tenant Act of 1863.

Moreover, from an inspection of the two Acts, it is evident that the modes of procedure provided are different and inconsistent in several important respects.

3. After a careful examination of the eighty-eight pages of plaintiffs' testimony contained in the transcript, we do not see how the Court could have denied the nonsuit moved by the defendants. From the 29th till the 31st of December, 1869, Susenbeth held possession of the premises as the agent of the plaintiffs, and by virtue of the power of attorney from them. The term of Susenbeth's lease from plaintiffs commenced upon the first day of January, 1870. It was the evident intention of Susenbeth and the plaintiffs, that the former should hold the premises for the latter until the commencement of the term, and should thereafter hold it in his own right as tenant under the lease. On the morning of the first of January if Susenbeth was still in possession, the contract of lease was consummated, and he then became tenant in possession under it. No other or more formal entry could be required.

We find no proof of any act of the defendants prior to that date amounting to an ouster, much less a forcible ouster of the plaintiff or his agent. The entry of the defendants Gurnee and others on the evening of the thirty-first of December was peaceable and after the manner of ordinary travelers entering a public hotel, and was made without objection on the part of Susenbeth. The assertion by Gurnee, later in the evening, of his title to the property and possession of it, was unaccompanied by any violence or threats of violence. There was not even any talk of the expulsion of Susenbeth from the premises, and he appears to have occupied them thereafter in the same manner in which he had previously occupied them. We can see noth-

ing in the occurrences of that evening to constitute either a forcible entry or a forcible holding within the meaning of the first two sections of the Forcible Entry Act, under which the first two counts of the complaint were made. Nor was there any evidence to sustain the third count, which was framed under the third section of the Act; for the original entry was not unlawful, and if it had been unlawful, the right to the possession of the premises had passed from the plaintiffs when the demand for surrender was made.

The matters alleged in the fourth count do not constitute an independent cause of action. The fraudulent acts which may be alleged under the provisions of the fifth section of the Act, go to the enhancement of damages merely, when a case is made out under one of the first three sections.

It was claimed by appellant that the forcible entry by defendants on the second of January into the room occupied by Susenbeth was an injury to the possession of plaintiffs, and that at least a cause of action was made out upon the fifth count of the complaint, which charged an entry by force upon this separate room. The fact of a forcible entry by the defendants at that time is not disputed, and the only question is, whether this room was then in the possession of Susenbeth as the lessee or as the agent of the plaintiffs. The lease to Susenbeth was by its terms a demise of the entire premises. It contains, however, several covenants upon the part of the lessee, and among others the following : "That said J. S. Polack and his wife, as further consideration of this lease, shall retain their room adjoining the parlor and occupy the same, and board at said hotel as long as they desire, without any charge, excepting wines, beer, and spirits."

It would seem that the room mentioned in this covenant was one which had been selected and occupied by plaintiff during the term of Shafer, the lessee preceding Susenbeth, under the provisions in his lease giving them "the right to

name and occupy a room and obtain board at said Geyser Hotel for such time as they may desire, and without charges," etc.  The clause in Susenbeth's lease, above quoted, merely gave to the plaintiffs the right to occupy the room upon the same terms as before.  It was a mere covenant upon the part of the lessee, but not a reservation of a specific portion of the premises from the operation of the lease.  The general possession of the entire property passed to Susenbeth under his lease, and the forcible entry upon the second of January was an injury of which he alone could complain.

We find no substantial error in the rulings of the Court in the admission or rejection of evidence.

Judgment and order affirmed.

Mr. Chief Justice WALLACE did not express an opinion.