[No. 3,262.]

JAMES M. REYNOLDS, Administrator of the Estate of W. W. Reynolds, Deceased, ISAAC REYNOLDS, JOHN KIRK, and D. K. NEWELL v. CHARLES HOSMER.

Complaint in Action for Damages.—In an action for damages caused by the sale of the plaintiffs' real estate under an execution issued on an erroneous judgment, afterwards reversed, it is not necessary in the complaint to make a direct averment of the existence of the property, if that fact appears by necessary inference drawn from the facts stated.

Amendment to Pleading.—If the Court, during the trial, grants leave to file an amendment to the complaint, and it is filed before the argument is concluded, and there is nothing in the record to show the other party was not present and consenting, the amendment will not be disregarded in the Supreme Court.

Idem.—The facts that the Clerk's minutes show that leave was given to file an amended complaint, and that amendments only to the complaint were filed, do not furnish ground for wholly disregarding the amendments in the Supreme Court.

REVERSAL OF JUDGMENT.—If a judgment is reversed by the Supreme Court of the United States, with directions to the Court below to enter a decree in accordance with the opinion, and its mandate is filed in the lower Court, the judgment is set aside, even if the lower Court does not make any order conforming its judgment to that of the Supreme Court, and if the lower Court denies a motion made to thus modify the judgment.

SALE OF LAND ON JUDGMENT AFTERWARDS REVERSED.—If real estate is sold on a judgment, and the judgment is afterwards reversed, the former owner has his election to either have the sale set aside and be restored to possession or to affirm the sale and maintain an action for damages.

ORDER DENYING MOTION TO SET ASIDE A SALE NOT AN ESTOPPEL.— A person whose land is sold on an erroneous judgment, afterwards reversed, is not estopped from maintaining an action for damages by having had a motion to set aside the sale and be restored to possession denied.

WHO LIABLE FOR SALE MADE UNDER ERRONEOUS JUDGMENT. — One who takes an assignment of an erroneous judgment, and procures an execution to be issued on it, and becomes a purchaser of land sold under the execution, is not entitled to protection as a bona fide purchaser, and is liable in an action for damages caused by the sale.

UNCERTAINTY IN COMPLAINT.—A defect in a complaint for uncertainty must be taken advantage of by special demurrer. It is not reached by a general demurrer.

PLEADING TENANCY IN COMMON.—An averment in a complaint, where there are several plaintiffs, that the plaintiffs own seven tenths of certain real estate, raises the legal presumption that they own it as tenants in common.

TENANTS IN COMMON MAY JOIN IN ACTION.—Tenants in common may join as plaintiffs in an action for damages for the sale of land under an erroneous judgment, which is afterwards reversed; and if one of the tenants in common is dead, his executor or administrator may join as plaintiff with the other tenants.

APPEAL from the District Court of the Twelfth Judicial District, City and County of San Francisco.

A corporation called the "South Fork Canal Company" constructed a ditch and flume for the purpose of carrying the waters of the South Fork of the American River from a high point among the spurs of the Sierra Nevada Mountains to the summit of the hills and high mining grounds surrounding the Town of Placerville, El Dorado County. On the 12th day of June, 1854, George Gordon commenced a

suit in equity in the District Court of the United States for the Northern District of California, against said corporation, to enforce a lien on the ditch and flume for work and labor performed on the ditch and flume and materials furnished therefor, and in the suit W. W. Reynolds and the plaintiffs here, Kirk and Isaac Reynolds, were codefendants. About the 11th day of November, 1858, W. W. Reynolds died, and the plaintiff, James M. Reynolds, has been the administrator of his estate since the 16th day of March, 1859. Such proceedings were had in the suit that a decree was rendered in the Circuit Court of the United States for the Northern District of California on the 8th day of September, 1865, adjudging that there was due from the corporation to Gordon one hundred and fifty-one thousand and sixty-four dollars and twenty-one cents, and that the same was a lien on the whole ditch and flume, and that it be sold and the proceeds be applied to the satisfaction of the lien. A Master in Chancery was appointed by the decree to make the sale, and, on the 8th day of November, 1865, the Master sold the whole ditch and flume to Hosmer, the defendant here, for the sum of seventy-five thousand dollars. Hosmer, before the decree was made, had received an assignment from Gordon of all Gordon's right, title, and interest in the demand in suit. The sale of the Master was confirmed, and on the 16th day of July, 1866, he gave Hosmer a deed conveying to him all the right, title, and interest of the defendants in the action. The amount of Hosmer's bid was credited on the amount found due by the decree, and Hosmer entered into immediate possession of the property. Before the sale, and on the 13th day of November, 1865, a writ of error was prosecuted from the decree to the Supreme Court of the United States. At the December Term, 1867, the Supreme Court of the United States reversed the judgment and decree, and adjudged that the plaintiff had no lien on that part of the ditch and flume extending from the Grand Res-

ervoir, near Placerville, to Long Cañon, a distance of six-
teen and one quarter miles, and issued a mandate to the
Circuit Court with directions to enter a decree in conformity
with the opinion of the Supreme Court. On the 17th day
of August, 1868, the mandate and opinion of the Supreme
Court was filed in the Circuit Court, and on the same day
the defendants and their successors in interest filed a peti-
tion in the Circuit Court to set aside the sale made by the
Master, and to modify the decree so as to make it conform
to the opinion of the Supreme Court. On the thirtieth day
of September following the Circuit Court denied the motion.
At the time of the rendition of the decree of the Circuit Court,
and at the time of the Master's sale and the confirmation
thereof, James M. Reynolds, as administrator of the estate of
W. W. Reynolds, deceased, owned six tenths undivided of the
ditch and flume, and D. K. Newell owned one undivided one
tenth thereof. On the 24th day of March, 1869, this action
was commenced to recover damages for the sale of said six-
teen and one quarter miles of the ditch and flume, extending
from the Grand Reservoir to Long Cañon.

The averment of the complaint in relation to the owner-
ship of the property was as follows: "That at the time of
the rendition of the said judgment and decree of the Cir-
cuit Court of the United States, and at the time of said
Master's sale, and at the time of the confirmation thereof,
the plaintiffs were the owners of seven tenths of said canal,
flume, and the appurtenances thereof, and the rents, issues,
and profits issuing out of the same."

This will illustrate the point made by the defendant that
the complaint did not show that the estate of W. W. Rey-
nolds owned any interest in the property.

The defendant demurred to the complaint, because it did
not state facts sufficient to constitute a cause of action, and be-
cause there was a misjoinder of parties by joining the plaintiff,
James M. Reynolds, with the other plaintiffs, it not appear-

ing that the estate of which he was administrator became interested in the ditch and flume by the same conveyance or title with the other plaintiffs, or that said estate was, at the time of the commencement of the action, jointly interested with the other plaintiffs in the damages claimed, and that the plaintiff Newell was improperly joined as plaintiff, because it did not appear that the plaintiffs held their interest as partners or joint owners, or that they were jointly injured or jointly interested in the cause of action. The Court overruled the demurrer.

The defendant, in his answer, set up the order of the Circuit Court denying the motion to set aside the sale, and to modify the decree as a bar to the action.

On the trial, the plaintiffs' counsel, before the close of their argument, by leave of the Court, filed an amendment to the complaint. The cause was tried without a jury, and James M. Reynolds, the administrator, and D. K. Newell recovered judgment for the sum of seventeen thousand five hundred dollars, and a judgment of dismissal was rendered as to plaintiffs Kirk and Isaac Reynolds.

*George E. Williams*, and *Sharp & Lloyd*, for Appellant.

The complaint does not show the existence of the property. The necessity for the complaint to show this was not controverted by counsel for respondents; but they claimed that the existence of the property was to be assumed, or to be inferred from other facts stated.

The essential rules, as stated in *Green* v. *Palmer*, 15 Cal. 414, when applied to the complaint, solve this question without any difficulty: First—Can it be made the subject of a material issue? Second—If it be denied, will the failure to prove it decide the case in whole or in part?

Every allegation contained in the complaint could be denied specifically, and yet not raise an issue as to the existence of the property. Such material averment cannot

be presumed from the existence of other facts. (*Stringer* v. *Davis*, 30 Cal. 321; 1 Van Santvoord, 773, 774; 15 Barbour, 34, 35; *Van de Sande* v. *Hall*, 13 How. Pr. 458.)

The canal did not have a natural existence—it was to be an artificial structure. Whether it was constructed by the South Fork Canal Company, or, if constructed, whether it was in existence at the time of the judgment and sale, the complaint fails entirely to state.

If the canal, or that portion for the sale of which respondents claim damages, never existed, this litigation would be without a subject matter.

It was material, and clearly incumbent on respondents, not only to allege in their complaint, but, if denied, to prove the fact of the existence of the canal, or the portion for the sale of which damages are here claimed; that it was constructed or owned by the South Fork Canal Company, before the date of the alleged decree in *Gordon* v. *The S. F. Canal Co.*; and that respondents were in privity with the title of the company—otherwise no injury could have resulted to respondents by the sale under the decree, and this action must fail.

The original judgment and decree has never been set aside, notwithstanding the decision of the Supreme Court of the United States. The Supreme Court decided that the decree of the Circuit Court was erroneous, so far as foreclosing the lien upon the sixteen and one fourth miles from Long Cañon to the Grand Reservoir, near Placerville.

The Supreme Court directed the Circuit Court to enter a decree in accordance with the opinion.

The application to modify the decree was denied by the Circuit Court. This action of the Circuit Court left the original decree in full force and effect. Whether the decision of the Circuit Court was right or wrong cannot be tried in this action. Respondents' remedy was either by appeal or mandamus. Until the original decree in *Gordon*

v. *South Fork Canal Co.* is set aside, it is a complete bar to any action for damages, or to recover the property.

If respondents have any claim for damages, it is against Gordon, and not against appellant. (*Fergus* v. *Woodworth*, 44 Ill. 381.)

If appellant, by taking the assignment, assumed all the liabilities of Gordon, and the reversal by the Supreme Court set aside and wiped out the original decree, then the remedy of respondents is to recover the property, and not damages. (*McTilton* v. *Love*, 13 Ill. 494; *Hubbell* v. *Administrator of Broodwell*, 8 Ohio, 127; *McLagan* v. *Brown*, 11 Ill. 524; *Johnson* v. *Lamping*, 34 Cal. 301.)

Six tenths of the judgment is in favor of Reynolds, as administrator of the estate of W. W. Reynolds, deceased. Whereas, the complaint does not show that the estate of W. W. Reynolds ever owned any interest in the property.

In the title of the action, the words "administrator of the estate of W. W. Reynolds, deceased," are to be treated as *descriptio personæ*. It was so held in *Henshall* v. *Roberts*, 5 East. 150; *Merritt* v. *Seaman*, 2 Selden, 171; *Christopher* v. *Stockholne*, 5 Wend. 38; *Sheldon* v. *Hoy*, 11 How. Pr. 14; *Gould* v. *Gloss*, 19 Barbour, 184; *Hunt* v. *Van Alstyne*, 25 Wend. 605.

The allegation by all the plaintiffs, that James M. Reynolds was appointed administrator of the estate of W. W. Reynolds in 1859, does not cure the defect. There is no allegation anywhere in the complaint, that J. M. Reynolds sues in a representative capacity. The allegation of ownership is that the plaintiffs were the owners, of whom J. M. Reynolds is one, but not "as" administrator. The complaint fails to show any ownership by plaintiffs, prior to September 8th, 1865. W. W. Reynolds died in 1858, and J. M. Reynolds was appointed administrator in 1858, seven years prior to the date of ownership in the property. Can there be a doubt as to the necessity of alleging some fact that

would show that the property belonged to the estate of W. W. Reynolds? (Chitty on Pleadings, Vol. 1, pp. 151, 152; Gould v. Gloss, 19 Barbour, 184.)

*Mc'Cullough & Boyd, Parker & Roche*, and *G. G. Blanchard*, for Respondents.

It is not necessary or usual to allege the existence of the *locus in quo* or the subject matter of the action. Suppose we had brought ejectment for the canal, counsel would insist that there should have been an allegation in the complaint that the property existed. We apprehend it would have been sufficient to aver our ownership and ouster, and to assume the existence of the land. In an action of trespass, it is sufficient to allege the possession of the property and the intrusion; in replevin, ownership and dispossession.

We have alleged the existence and object of the corporation, the decree of the Circuit Court, which finds one hundred and fifty thousand dollars due for constructing the canal, etc., particularly describing the property and ordering its sale, the sale of said property, the purchase at said sale of said property by the appellant for seventy-five thousand dollars, the confirmation of said sale, the making of the deed in pursuance of said sale conveying said property, again particularly describing it, the entry and taking possession by appellant under the deed of said property, and then we allege that at the time of the rendition of the said decree and sale, and confirmation, we were the owners of seven tenths of said canal, etc., and the value thereof.

Counsel might as well urge that our complaint was defective because it did not contain an allegation that the defendant was in existence. The existence of the canal was a probative fact, and if defendant had denied the sale, the making of the deed, entry into possession, our ownership, or the value of the canal, one means of disproving our allegations, would have been to show that no such canal existed.

The omission to aver the existence of the canal could not affect the substantial rights of the parties, and would furnish no ground for reversal. (Pr. Act, Sec. 71; *Regan* v. *O'Rielly*, 32 Cal. 11.)

In this case Gordon and Hosmer, who was his assignee of the suit and stood in his shoes as complainant, obtained an erroneous decree to sell our property. That decree was reversed by the Supreme Court of the United States (6 Wall. 572). We filed its mandate of reversal in the Circuit Court. We then asked to have the sale to the appellant, who had become really the complainant, and so treated by the Court, set aside. The Circuit Court denied the motion, upon the opposition of appellant, and referred us to our action for a money equivalent, and that action we have brought.

Appellant now says that, notwithstanding the reversal, we cannot sue, but could only appeal, or mandamus the Judge. He cites no authority for this position.

Our claim is not against Gordon. Hosmer became Gordon, with all his rights and liabilities. (*Langley* v. *Warner*, 3 Comstock, 327.)

Appellant argues that if we can sue him, our suit must be ejectment for the land, and not an action for a money equivalent; the reverse of the proposition he succeeded in maintaining in the Circuit Court.

The better opinion is that such an action as this is our only remedy, whether it be a party to the record, or a stranger who purchased under the erroneous decree. (*Gordon* v. *Canal Co.*, 8 Am. Law Reg. 279; *Parker* v. *Anderson*, 5 B. Monroe, 445; 18 B. Monroe, 230; *Gray* v. *Brignardello*, 1 Wallace, 627; *Bank of U. S.* v. *Bank Wash.*, 6 Peters, 19.)

At any rate we can elect, and an unsuccessful attempt to set aside does not preclude us from suing; at least defendant is equitably estopped from raising the objection. If these remedies are cumulative, as some authorities hold, we can pursue that one that eventually brings us redress. (*Johnson*

v. *Lamping,* 34 Cal. 301; *Lott* v. *Swezey,* 29 Barb. 94; *Hunt* v. *Loucks,* 38 Cal. 377.)

And even if the Circuit Court had set aside the sale and restored us to possession, we could still have asked for mesne profits. (*Cummings* v. *Noyes,* 10 Mass. 433.)

The complaint is sufficient. The title is "*James M. Reynolds, administrator of the Estate of W. W. Reynolds, deceased,* v. *Charles Hosmer.*" Under our code the title is a part of the complaint. (Pr. Act, Secs. 37, 39, 70 ; *Rosecrantz* v. *Rogers,* 40 Cal. 489; *Grantman* v. *Thrall,* 44 Barb. 174.)

The "plaintiffs complain." Who are the plaintiffs? Then they aver an appointment of Reynolds as administrator, which vital averment was wanting in the cases cited by the appellant. Then that a suit was commenced against "several other parties defendants, among whom were these plaintiffs and their predecessors in interest," etc. That the canal and "appurtenances, and all the right, title, and interest therein of these plaintiffs, and of each of them, and of their predecessors in interest, was sold," etc. That at certain times "the plaintiffs were the owners," etc., "wherefore the plaintiffs demand judgment." What plaintiffs? Those named in the title, and as there described. (*Stanley* v. *Chappell,* 8 Cowen, 237; *Grantman* v. *Thrall,* 44 Barb. 171; *Smith* v. *Levinus,* 4 Selden, 474.)

Besides, this point cannot be successfully made on this record, unless the complaint fails to afford any information at all as to the capacity in which Reynolds sues. As just shown, by quotations from the complaint, this is not the fact. (*Hallock* v. *Jaudin,* 34 Cal. 174.)

In the case cited appellants relied upon the same authorities as does the appellant in this case, but without success.

In the cases cited by appellant there was either no averment of the representative capacity at all, as there is here,

or the point was raised by special demurrer. And further, the cases we cite are later, and under the code.

By the Court, BELCHER, J.:

This is an action to recover damages. The defendant demurred and answered to the complaint. The demurrer was overruled and after trial the plaintiffs recovered judgment, from which the defendant has appealed. The points made relate to the sufficiency of the complaint.

It is insisted that the complaint is insufficient because it does not allege the existence of the property for the loss of which the plaintiffs claim damages.

It is alleged that the South Fork Canal Company was organized for the purpose of carrying water, by means of a canal and flume to be constructed between certain points named; that an action was commenced against the company and others, and that such proceedings were had in the action that it was afterwards adjudged by the Circuit Court of the United States that the plaintiff in the action had a lien upon the company's canal and flume for labor and materials furnished in their construction, and that the lien be foreclosed and the canal and flume be sold; that under and by virtue of this decree the canal and flume were sold; that the sale was approved, and thereafter a deed was made to the purchaser, describing the property as " the canal, flume, and ditch known as the South Fork Canal, with the appurtenances thereof, situated," etc; that the judgment was afterwards reversed by the Supreme Court of the United States, and it was by that Court adjudged and decreed that the plaintiff had no lien on the canal and flume, extending, etc., a distance of sixteen and one quarter miles; and that at the time of the rendition of the judgment and decree by the Circuit Court, and at the time of the sale and the confirmation

thereof, the plaintiffs were the owners of seven tenths of said canal and flume, and the appurtenances thereof.

While in this there is no direct averment that the canal and flume were ever constructed, that fact clearly, and we think sufficiently, appears by necessary inference. It is not usual, and ordinarily is not necessary, to aver the existence of the subject matter about which litigation arises. If the action had been ejectment for the canal, it would have been sufficient to have alleged the ownership of the plaintiffs and an ouster by the defendant. So, if it had been trespass, only the possession of the plaintiffs and the intrusion of the defendant need have been stated.

The point that the respondents are not shown by the complaint to have been parties to or connected with the action of *Gordon* v. *South Fork Canal Company* is answered by the amendments filed to the complaint. If it was error to overrule the demurrer on this ground, the error was cured when the complaint was amended. Nor are we at liberty to disregard these amendments. They were filed by the permission of the Court before the argument was concluded, and there is nothing in the record to show that the counsel for defendant were not present and consenting. The minutes of the Clerk show, it is true, that leave was granted to file an amended complaint, while only amendments to the complaint were filed. This was undoubtedly an error of the Clerk in writing up his minutes, and furnishes no ground for wholly disregarding the amendments.

It is alleged in the complaint that after the mandate and opinion of the Supreme Court were filed in the Circuit Court, the respondents, upon notice to the appellant, filed their petition to set aside the sale of the canal, and to modify the original decree, so as to make it conform to the opinion of the Supreme Court, and their application was denied. It is claimed that this action of the Circuit Court left the original decree in full force and effect, not-

withstanding the judgment of the Supreme Court, and that respondents' only remedy was either by a new appeal or by mandamus. We do not think so. When the Supreme Court reversed the judgment of the Circuit Court, and adjudged that the plaintiff had no lien on a portion of the canal, and its mandate was filed in the lower Court, showing those facts, the judgment was reversed, whether the lower Court afterwards made any order conforming its judgment to that of the Supreme Court or not. If the plaintiffs have any rights here, they come from the reversal by the Supreme Court, and not from any subsequent action or want of action by the Circuit Court.

After the judgment was rendered in the Circuit Court, but before the sale, the plaintiff in that action assigned to the defendant in this all his right, title, and interest in the judgment, and in the canal and flume. The defendant then caused the canal to be sold under the judgment, and at such sale became the purchaser thereof for the sum of seventy-five thousand dollars. It is now contended that if, after the reversal by the Supreme Court, the respondents had any remedy as to that portion of the canal upon which it was adjudged by the Supreme Court that the plaintiff had no lien, their remedy was to recover back the property, and not damages; or if they might recover damages, then their action should have been against Gordon, the plaintiff in the action, and not against the appellant.

The doctrine formerly prevailed that whenever a sale was made under an erroneous decree or judgment, which was afterwards reversed—the Court rendering the judgment having jurisdiction of the person and subject matter—the purchaser acquired a good title, notwithstanding the reversal. It was enough, it was said, for the buyer to know that the Court had jurisdiction, and exercised it, and that the judgment, on the faith of which he purchased, was made and authorized the sale. With the errors of the Court he

had no concern. The former owner was then turned over to an action for damages to make good the loss of his property. That doctrine is now so far modified that, if the plaintiff in the judgment be himself the purchaser, the former owner, after reversal, may, at his election, either have the sale set aside and be restored to the possession, or have his action for damages. (*Reynolds* v. *Harris*, 14 Cal. 667; *Johnson* v. *Lamping*, 34 Cal. 293.)

The plaintiffs, under the rule stated, were clearly entitled to affirm the sale, and maintain their action for damages. Nor were they, in our opinion, estopped from so doing by their abortive attempt to have the sale set aside in the Circuit Court. Upon what ground their motion was denied does not appear; but it may possibly have been because the motion was made to set aside the whole sale, and not the sale of that portion of the canal upon which it was adjudged that the plaintiff had no lien.

But whatever may have been the reason, there is nothing in the complaint to show that the denial of one remedy could in any way operate as a bar to the successful prosecution of another and cumulative one.

The only other question under this head is: should the action have been brought against Gordon, and not against the defendant? It was not Gordon, but the defendant, who caused the plaintiffs' property to be sold under an erroneous judgment, and thereby produced the injury of which the plaintiffs complain. Why should the defendant not make good the loss which he himself has occasioned? We find no authority directly in point, but in *Maghee* v. *Kellogg*, 24 Wend. 30, it was held that money collected under a judgment which was subsequently reversed might be collected back in an action against the real parties plaintiff, when the suit had been prosecuted by the assignees of a chose in action in the name of the assignor. *Langley* v. *Warner*, 3 Coms. 327, is to the same effect. In *Bank of the United*

*States* v. *Bank of Washington*, 6 Pet. 15, it was held that the reversal of a judgment gives a new right or cause of action against the parties to the judgment, and creates a legal obligation on their part to restore what the other party had lost by reason of the erroneous judgment. In *McJilton* v. *Love*, 13 Ill. 486, the judgment had been assigned, and at the sale thereunder the property was purchased by the assignee, McJilton. The action was brought to set aside the sale and restore the possession. "The complainant," said the Court, "made out a clear case for the interposition of a Court of equity, as against Fairfield, and Field and Hall. And McJilton occupies no more favorable position. He is not a stranger to the judgment. He is not entitled to protection as a *bona fide* purchaser under an erroneous judgment. He was the assignee of the judgment, and had the control of the execution when he became the purchaser of the lands. By the assignment he succeeded to no greater rights than Field and Hall had under the judgment. He took the judgment subject to all the equities subsisting between the original parties." If the assignee of a judgment, under which a sale has taken place at which he was purchaser, is not a stranger to the judgment, so as to entitle him to protection as a *bona fide* purchaser, then it is not easy to see how he can defend against any appropriate action which the law gives to such case. On the whole we are of the opinion that the action is properly brought against the defendant.

It is also claimed that the complaint is insufficient, because, while the judgment is in favor of James M. Reynolds as administrator of the estate of W. W. Reynolds, deceased, the complaint fails to show that the estate of W. W. Reynolds ever owned any interest in the property. It is apparent, and is admitted, that the pleader intended to bring the action in the name of the administrator of the estate and for the estate. If the complaint is defective for not showing with sufficient certainty whether the title was in the estate

or in the administrator, it was a defect for uncertainty, and should have been taken advantage of by special assignment in the demurrer.   It was not reached by a general demurrer.

The last point presented is that there was a misjoinder of parties plaintiff, because the cause of action in favor of the estate of Reynolds and the cause of action in favor of Newell were several and distinct and not joint.   The averment is that the plaintiffs owned seven tenths of the canal.   The legal presumption is that they owned it as tenants in common.   By statute in this State it is provided that all persons holding as tenants in common, joint tenants, or coparceners, or any number less than all, may jointly or severally bring or defend any civil action for the enforcement or protection of the rights of such party.   If one of the tenants be dead his executor or administrator may be joined with the other tenants.   (*Touchard* v. *Keyes*, 21 Cal. 208.)

Notwithstanding the action was for damages, it was clearly for the enforcement of the rights which the plaintiffs had as tenants in common.

Judgment affirmed.

Mr. Justice CROCKETT did not express an opinion.