## JAMES A. JOHNSON *v.* P. A. LAMPING.

DEBTOR AND TORTFEASOR.—L. recovered judgment against R. Co., from which R. Co. appealed to the Supreme Court, where the judgment was modified by reducing the rate of interest and striking out the requirement for its payment in gold coin. No stay of proceedings, pending said appeal, having been obtained, L. caused the mining claims of R. Co. to be sold under execution, issued on said judgment before said reversal, and became the purchaser for the amount of his judgment—he paying to the Sheriff his legal fees, and giving receipt on his judgment for the amount of his bid. Within six months thereafter, L. received from the working of said claims seven thousand dollars over the expenses for said work : *held*, first, on the assumption that said modification of judgment *per se* rendered said sale void, that the working of said claims by L. was a trespass, and he a tortfeasor, and not a debtor of R. Co. in the sense of the statute in relation to attachments, (Pr. Act, Sec. 126 ;) second, that while R. Co., at their option, could hold L. responsible as tortfeasor, or, by waiving the tort, treat him as their debtor, yet until the tort should be so waived by R. Co., neither they nor their creditors could treat L. as a debtor for said amount realized by him from working said claims.

IDEM.—Where, in such a case, R. Co. had ceased to work said claims before said sale, and immediately after it had been made entered into a contract with L., by which it was stipulated that R. Co. should work the claims during the time allowed for redemption, and pay the gross proceeds to L., who should pay the expenses of said working and pay wages to R. Co. for said working, whether the claims should yield a profit or not, and under said contract L. received from R. Co. gold dust of the value of said seven thousand dollars over the expenses of such work : *held*, that such contract was valid, and said gold dust became the property of L., and thereby he became neither debtor nor tortfeasor.

IDEM—SETTING ASIDE EXECUTION SALE.—Where mining claims were sold to the judgment creditor, on an execution issued on a judgment rendered against the owners for the full amount of said judgment, and afterward said judgment was reduced in amount by this Court on an appeal taken therefrom by said owners : *held*, that said sale was valid when made, but upon said modification of the judgment was liable to be set aside, on the application therefor by said owners, either by this Court or the Court below, upon the return of the case, or by action by the owners against the purchaser ; but except upon such application or action the validity of the sale will remain unaffected by the modification of said judgment.

IDEM.—Until said owners elect to treat said sale as valid, the judgment creditor will not become the debtor of the owners of said mining claims for the amount of said purchase price bid by him in excess of the amount of the judgment, as modified on said appeal.

IDEM.—The plaintiff, as creditor of the owners, in case of collusion between said purchaser and owners, or for other legal grounds, might perhaps come in by action, but not by way of attachment of said balance as a debt due from said purchaser to said owners.

APPEAL from the District Court, Tenth Judicial District, Sierra County.

The defendant had judgment in the Court below, and plaintiff appealed.

The other facts are sufficiently stated in the opinion of the Court.

*Creed Haymond*, for Appellant, argued:

That the order of this Court, made in *Lamping* v. *The Red Star Company*, modifying the judgment, was, in effect, a reversal; and cited Bouv. Law Dic., title " Reverse."

That Lamping, by virtue of his certificate of sale, was entitled to the rents, issues and profits of the property pending the time for redemption; but that certificate depended for its validity upon the judgment. The purchaser is only entitled to the rents and profits whilst the judgment stands; after its reversal he must account to the owner for such rents and profits; and cited *Raun* v. *Reynolds*, 15 Cal. 460.

That after the modification of the judgment in *Lamping* v. *The Red Star Company*, the relation existing between Lamping and the company was that of debtor and creditor. He was indebted to the Red Star Company in the full amount of the rents and profits received by him, which amounted to seven thousand dollars, and they could at any time have maintained an action of assumpsit against him for the amount thereof; and cited *Cummings and Wife* v. *Noyes*, 10 Mass. 433; *Bank of the United States* v. *Bank of Washington*, 6 Peters, 19; *Reynolds* v. *Harris*, 14 Cal. 680.

That neither a motion nor order was necessary to avoid the sale to Lamping of the Red Star Mining Claims, after the reversal of the judgment by this Court. The only object of a motion to set aside the sale would be the removal of the cloud on the title arising from an outstanding certificate or deed. The validity of the sale does not depend upon the certificate or the deed, for a party claiming any rights under either must produce a valid judgment to sustain

them; and with the reversal of the judgment falls the certificate or deed, and they are wholly ineffectual for any purpose whatever.

That though it be held that the order of the Supreme Court made in *Lamping* v. *The Red Star Company* did not in effect amount to a reversal of the first judgment rendered by the District Court in that case, yet Lamping is indebted to the Red Star Company in the sum of eight hundred and sixteen dollars and ninety-seven cents, being the difference between his bid at the Sheriff's sale (less costs) and the amount of his judgment as modified, and for that amount, at least, the plaintiff should have had judgment.

*P. Van Clief,* for Respondent.

I. The respondent was not liable to any members of the Red Star Mining Company, either jointly or severally, upon any contract, express or implied, for the gold dust received from the claims after he became the purchaser: 1st. Because he was entitled to the proceeds of said claims over expenses from the time he became the purchaser at Sheriff's sale till the expiration of the time allowed for redemption; 2d. Because of the agreement entered into between him and the "members of the Red Star Mining Company;" 3d. It is not contended that respondent is liable for this gold dust to any one, unless the judgment under which he purchased had been reversed by the Supreme Court. It was not reversed, but only modified. (See *Lamping* v. *Hyatt,* 27 Cal. 100.)

The Supreme Court recognize it as a modification, and distinguish it from a reversal by allowing us fifteen days in which to consent to the proposed modification, and ordering that, in case we did not consent, the judgment be *reversed.*

The infallible test of a reversal, as distinguished from a modification, is that a reversal leaves the parties and all their rights precisely as they stood before the judgment. (7 Cal. 443; 9 Cal. 15.)

Nothing short of the reversal of a judgment under which a Sheriff's sale is made can in any way affect the validity of such sale, even admitting that the judgment creditor is the purchaser. The old rule, which prevailed for a long time without any exception, was, that a reversal of a judgment would not invalidate a sale under it in any case; (*Manning's Case*, 8 Co. 96; *Carter* v. *Simpson*, 7 John. 535; *Woodcock* v. *Bennet*, 1 Cow. 734;) and the only exception now allowed is the case in which the judgment creditor becomes the purchaser, provided only that the judgment reversed was not a nullity.

Had the modification only extended to the interest allowed, or even to a portion of the principal, the sale might have stood. It would then have been a case precisely similar in principle to the case of a Sheriff's sale made under and by virtue of several executions at law, in which it has been held that the sale must stand good so long as any one of the judgments on which the executions issued remains unreversed. (*Bruce* v. *Westervelt*, E. D. Smith's R. N. Y. Com. Pleas.) Had the judgment under which the respondent purchased been reversed on the ground of irregularity merely, still the sale would have remained valid till avoided or set aside by some direct proceeding for that purpose; and in *Reynolds* v. *Harris*, above cited, it was held that this proceeding to avoid the sale might have been by motion in the Court below, in case the proper steps had been taken in the Supreme Court to procure an order of restitution as provided in section three hundred and forty-five of the Practice Act. (See authorities cited by counsel in that case.) A judgment which may be reversed or modified for mere irregularity is a valid judgment, and while it stands will support and justify its own execution in any mode provided by law; and the reversal of it after execution by no means nullifies the acts done by virtue of its authority before it was reversed. *Bank of United States* v. *Bank of Washington*, 6 Peters, 19, where it is said : "The reversal of the judgment cannot have a retrospective operation and make void that

which was lawful when done." Our understanding is that all acts done by authority of an irregular judgment remain valid after such judgment is reversed, and that the only exception to this rule is the case of a sale on execution, which, after reversal of the judgment, may be avoided by the judgment debtor, *at his election*, when the judgment creditor is the purchaser. And we further understand, that no modification of a judgment which does not set aside all authority to sell under it, will at all affect a sale made by its authority before the modification. (*Langley* v. *Warner*, 3 N. Y. 329; *Wood* v. *Jackson*, 8 Wend. 37.)

II. Respondent was not indebted to the Red Star Mining Company on account of the excess of his bid, at the Sheriff's sale, over the amount of his judgment as modified. If liable at all, his liability did not arise out of any contract, express or implied. There certainly was no express contract to pay or refund any sum of money. So far as the bid may be considered an express contract, it was a contract with the Sheriff alone, and it was not in the power of the Sheriff to make a contract with respondent which would bind him to the Red Star Mining Company, or to the defendants in execution. (Drake on Attachments, Sec. 545; *Pressnall* v. *Mabry*, 3 Porter, 105; *Grace* v. *Maxfield*, 6 Humph. 328; *Turner* v. *Armstrong*, 9 Yerg. 412; *Lewis* v. *Dubose*, 29 Ala. 219.)

Upon appellant's theory of the case, respondent was a tortfeasor, and while the Red Star Mining Company might, perhaps, waive the tort, and sue on assumpsit, yet this was their exclusive privilege, and until done clearly appellant could in no event, in a proceeding by way of attachment, treat appellant as the debtor of the company. (1 Hilliard on Torts, 44 *et seq.*)

38

By the Court, SANDERSON, J. :

This is an action by an attaching creditor against a garnishee. The case comes here upon the judgment roll, and the only question is whether the defendant was indebted to the debtors of the plaintiff at the time the attachment was served upon him, within the meaning of the one hundred and twenty-sixth section of the Practice Act.

The respondent makes certain points as to whether the debtors of the plaintiff are the same as the creditors of the defendant, which we pass without further notice. We assume, for the purposes of our judgment, that the debtors of the plaintiff are the same as the creditors, if such, of the defendant, and that the latter, if at all, is indebted to them jointly, as they are conceded to be jointly indebted to the plaintiff.

It appears from the findings that the defendant, some time previous to the suit of the plaintiff against the Red Star Mining Company, sued that company and obtained a judgment against it by default. The judgment was made to draw a certain rate of interest without there having been any prayer for such relief in the complaint. It was also made payable in gold coin, although the action was not upon a gold contract, as this Court subsequently held. It was also erroneous in certain other respects which need not be mentioned here. The case will be found reported in 27 Cal. 99. On appeal to this Court the judgment was modified by striking out the clauses in relation to interest and payment in gold coin, and in certain other respects to which reference has been made. There was no stay of proceedings in the Court below, and before the decision of the case by this Court the defendant had taken out an execution and caused the mining claims of the Red Star Mining Company to be sold. At the sale the defendant bid the full sum for which his execution called and became the purchaser. He paid the Sheriff no money, except his fees on the execution, but gave him a receipt, as is usual in such cases, for a sum equal

to the face of the execution less the fees paid to the Sheriff. The Red Star Mining Company had ceased to work their mine prior to its sale. After the sale a contract was made between the defendant and the company, by which the latter agreed to work the mine during the time allowed for redemption and pay over the proceeds to the defendant, and the latter agreed to pay all the expenses of working and to pay the company wages in any event, whether the mine should yield a profit or not. Under this contract the defendant received from the mine, over and above expenses, the sum of seven thousand dollars in gold dust.

In view of these facts the appellant claims : First—That the sale was made null and void by the modification of the judgment, and the defendant indebted to the company for the full amount of gold dust taken out of the mine without any deduction on account of his judgment against the company, because he has not pleaded it as a set-off in this action ; and second, that if the sale is valid the defendant is indebted to the company in a sum equal to the excess of his bid at the sale over the face of his judgment as it now stands.

Assuming, for the sake of the argument, that the modification of the judgment (which was a reduction of the amount) was equivalent to a reversal, and that by reason thereof the sale became null and void, and leaving out of consideration the contract between the defendant and the company under which the mine was worked, we cannot agree with counsel for the appellant that the claim of the company against the defendant became a debt in the sense of the statute in relation to attachments. (Pr. Act, Sec. 126.) The act of the defendant in working the mine, under the view now taken, was a trespass, and he became liable to the company in damages. He became a tortfeasor and not a debtor ; and concede that the company, as claimed by the appellant, could have waived the tort and elected to treat him as their debtor, it does not appear that they had ever at any time done so. The company had a legal right to hold

him responsible as a tortfeasor—that right they alone could waive, and they could not be deprived of it by their creditors. Until the company has elected to treat him as their debtor, the creditors of the company have no right to do so. (Drake on Attachments, Sec. 545; *Lewis* v. *Dubose,* 29 Ala. 219.)

But under this aspect of the case, we are further of the opinion that the gold dust became, in any event, the property of the defendant through the legal effect of the contract between him and the company under which the mine was worked. Admit that the company entered into the contract under a mistake, it was a mistake of law; besides there is nothing to show that the contract would not have been perfectly fair regardless of the sale. From aught that appears, whether the mine would pay for working was a problem yet to be solved. It appears that the company had quit working some time before the sale; why they did so, however, does not appear. Under these circumstances the contract was made, the company agreeing to work the mine for six months and give the gold taken out, be the same more or less, to the defendant, he agreeing to pay the company for their work, and all the other expenses of working the mine in either event, whether the mine should yield a profit or not. We see no reason why the contract was not valid and binding on the company. If so, the gold taken from the mine under it became the property of the defendant. Had the mine failed to pay expenses the loss would certainly have been his, and by parity of reason the gain should be his. So taking the contract into the account, the defendant not only did not become the debtor of the company, but he did not become a tortfeasor, and there was no cause of action whatever in favor of the company against him, for the contract was a license to enter and work the mine for his own benefit.

Was the defendant indebted to the company in the sum in which his bid exceeded his judgment after it was reduced by this Court?

The true condition of the sale—as valid or invalid—we consider to be this : The sale was valid at the time it was made ; but, the plaintiff in the execution having become the purchaser, it was liable to be set aside upon a reversal or modification of the judgment by this Court (Pr. Act. Sec. 345,) or by the Court below upon the return of the case, (*Reynolds* v. *Harris*, 14 Cal. 677–8,) upon the motion of the company.   This had not been done at the time the plaintiff's attachment was served upon the defendant, nor, so far as the case shows, has it been done yet.   It seems that the company can proceed in the matter by motion in the action in which the sale was made, or by action.   (*Reynolds* v. *Harris*.)   It is there suggested that such a motion is unaffected by the Statute of Limitations.   (We do not desire, by this reference to the case, to be understood as committing ourselves to that proposition.)   This right to have the sale set aside is at the election of the company, and not the creditors of the company, except as hereafter qualified. Until the company elects to treat the sale as valid there can be no pretense that the defendant is their debtor.   Whether he would be if they were to so elect it is unnecessary to say. We merely hold that the case presented fails to make the defendant a debtor of the company within reach of the plaintiff's attachment at the time it was served.   In a case like the present, if there should be collusion between the parties, or other legal grounds, the creditors might come in by action, perhaps, but there is clearly no case for an attachment.

Judgment affirmed.