[S. F. No. 2423.    Department One.—June 15, 1903.]

J. F. COWDERY, Appellant, v. LONDON AND SAN FRANCISCO BANK, Limited, Respondent.

JUDGMENT OF FORECLOSURE—EFFECT OF REVERSAL UPON APPEAL—MANDATE—POWER OF SUPERIOR COURT—VOID MODIFYING ORDER—PENDING ACTION.—The legal effect of the reversal of a judgment foreclosing a mortgage, with directions to the court below to enter a judgment in conformity with the opinion of the appellate court, is to vacate the decree reversed, and to leave it as if it had never been rendered, and the form of the mandate did not change the reversal to a modification, nor authorize the trial court to modify the judgment reversed. Although the change ordered was the deduction of about one thousand dollars from the sum declared due, leaving a balance larger than the purchase price of the land at the fore-

closure sale, and this court might have ordered the judgment modified, yet where this court decreed a reversal, an order of the superior court purporting to modify the judgment reversed, by deducting that sum from the deficiency judgment, instead of pursuing the mandate of this court to enter a new judgment of foreclosure, was totally ineffectual, and the case still stands as an action pending, with final judgement remaining to be entered.

ID.—ORDER MODIFYING JUDGMENT NUNC PRO TUNC—RELATION OF JUDGMENT—POWER OF COURT.—An order in so far as it purports to modify the judgment of foreclosure after reversal thereof, *nunc pro tunc,* is of no force. A *nunc pro tunc* order can only be made to show something done which was actually done but not entered in the record, and cannot be made to declare that something was done which was not done. There was no power in the superior court to make a new judgment of foreclosure relate back so as to preserve vitality in the judgment reversed and to give validity to a sale made under the judgment reversed.

ID.—RESTITUTION OF PROPERTY SOLD UNDER REVERSED DECREE.—The reversal of a judgment foreclosing a mortgage lays a foundation for restitution of the property sold under the decree where the rights of third persons have not intervened, either by motion in the action after the *remittitur* has been sent down or by independent action in any court of competent jurisdiction.

ID.—ACTION FOR RESTITUTION—MORTGAGE OF "RENTS AND PROFITS"—RIGHTS OF MORTGAGEE IN POSSESSION.—Although a mortgage covering the rents, issues, and profits, if not executed as a chattel mortgage is ineffectual to give the mortgagee a lien as against third persons; yet where such mortgagee is lawfully in possession, either through a receiver appointed by the court or personally, the owner in an action for restitution of the property sold, upon reversal of the decree of foreclosure, cannot recover the rents accruing either during the possession of the defendant or after the appointment of the receiver, and his only remedy is to have them applied upon the mortgage debt.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

Robert Harrison, for Appellant.

A reversal upon appeal vacates and annuls the judgment appealed from. (11 Am. & Eng. Ency. of Plead. & Prac., p. 1076.) The reversal of a judgment or order reverses every proceeding dependent upon it, and restores all parties to their original rights. (Hayne on New Trial and Appeal, sec. 279,

subd. 5; *Marks* v. *Cowles,* 61 Ala. 299, 302; *Folmer* v. *Folmer,* 71 Ala. 136, 139; *Effinger* v. *Kenney,* 92 Va. 245, 248, 249; *Cox* v. *Pruit,* 25 Ind. 90, 93; *Cresper* v. *Hanovan,* 86 Mo. 160, 168; *Powell* v. *Rogers,* 105 Ill. 323; *Haebler* v. *Myers,* 132 N. Y. 363, 368.[1]) The reversal of a judgment or decree leaves the matter as though none had ever been made. (*Ashton* v. *Heydenfeldt,* 124 Cal. 14, 17; *Raun* v. *Reynolds,* 18 Cal. 275, 290; *Reynolds* v. *Hosmer,* 45 Cal. 616, 623; *Argenti* v. *San Francisco,* 30 Cal. 458; *Will* v. *Sinkwitz,* 41 Cal. 588; *Keller* v. *Lewis,* 56 Cal. 468, 469; *Estate of Mitchell,* 126 Cal. 248.) The sale under the decree, where the complainant or his assignee and agent becomes the purchaser, is avoided, and restitution must be made. (12 Am. & Eng. Ency. of Plead. & Prac., pp. 91, 92; *Galpin* v. *Page,* 18 Wall. 350, 373; *Hager* v. *Cassel,* 70 Ill. 672; *Gott* v. *Powell,* 41 Mo. 416, 420; *Reynolds* v. *Harris,* 14 Cal. 667, 680;[2] *Jackson* v. *Lamping,* 34 Cal. 293, 301; *Reynolds* v. *Hosmer,* 45 Cal. 616, 629; *Hewitt* v. *Dean,* 91 Cal. 617, 620.[3]) A *nunc pro tunc* entry cannot be made to prejudice an existing right. (*Cosby* v. *Superior Court,* 110 Cal. 45, 50-52.) The mandate of this court has not been complied with, and the case must remain pending until the mandate is obeyed. (*Keller* v. *Lewis,* 56 Cal. 469; *Heinlen* v. *Marin,* 59 Cal. 180, 182; *Chafoin* v. *Rich,* 92 Cal. 471; *Lees* v. *Clark,* 28 Cal. 26; *Argenti* v. *Sawyer,* 32 Cal. 414; *New York R. R. Co.* v. *Schuyler,* 34 N. Y. 30.) The rents were not subject to the real-estate mortgage, and should be recovered by the owner. (*Guy* v. *Ide,* 6 Cal. 99;[4] *Locke* v. *Klunker,* 123 Cal. 231, 238; *Bank etc.* v. *Heron,* 120 Cal. 614; *Scott* v. *Hotchkiss,* 115 Cal. 89; *Modesto Bank* v. *Owens,* 121 Cal. 223; *Simpson* v. *Ferguson,* 112 Cal. 180;[5] *McKean* v. *German-Am. Bank,* 118 Cal. 374; *Kountz* v. *Omaha H. Co.,* 107 U. S. 378, 392.)

Charles P. Eells, for Respondent.

Restitution is in the discretion of the court. (Code Civ. Proc., sec. 957; *Yndart* v. *Den,* 125 Cal. 89; *Spring Valley Water Works* v. *Drinkhouse,* 95 Cal. 220; *Hewitt* v. *Dean,* 91 Cal. 619;[3] *Costes* v. *Peters,* 7 Rob. (N. Y.) 386.) The

---

[1] 28 Am. St. Rep. 589.
[2] 76 Am. Dec. 459.
[3] 25 Am. St. Rep. 227.
[4] 65 Am. Dec. 490.
[5] 53 Am. St. Rep. 201.

judgment rendered conformed substantially to the mandate of this court. (*Jessup* v. *City Bank of Racine,* 15 Wis. 604.[1])

SHAW, J.—This is an appeal by the plaintiff from a judgment in favor of the defendant, and from an order denying the plaintiff's motion for a new trial. The two principal questions presented, generally stated, are,—1. Whether or not a reversal of a decree of foreclosure, with directions to the court below to enter a judgment in conformity with the opinion of the appellate court, vacates the decree and affects a sale made under it, where the only change ordered was the deduction of about one thousand dollars from the sum declared due, leaving a balance larger than the purchase price of the land at the foreclosure sale; and 2. Whether or not the order of the court below modifying, by reducing the amount of it, the deficiency judgment entered after the sale, the order being made in an attempt to perform the mandate of the supreme court upon reversal, and under the circumstances hereinafter stated, is of any force or effect.

The facts are as follows: In March, 1895, the land in controversy was the property of Charles J. Bandmann, subject to a mortgage executed by Julius Bandmann to the defendant herein. At that time the defendant herein began an action in the San Francisco superior court against Julius and Charles Bandmann to foreclose the mortgage. Issues were formed, and on November 5, 1895, judgment was duly entered. On May 1, 1895, after the beginning of the action, and prior to the judgment, the land was conveyed by Charles J. Bandmann to the plaintiff, Cowdery. Process was immediately issued upon the judgment, and on December 4, 1895, the land was sold on the foreclosure decree to the plaintiff in the action, the defendant herein, for $29,500, leaving a deficiency of $3,574,34, and on December 7, 1895, a deficiency judgment was entered accordingly. In July, 1896, the defendants in the foreclosure case appealed to the supreme court from the judgment given in that action, and from the whole thereof, and on March 3, 1898, the judgment was reversed. The order of reversal in the *remittitur* was as follows: "Wherefore, it is adjudged by the court that the judgment

---

[1] 82 Am. Dec. 703.

and order of the superior court in and for the city and county of San Francisco in the above-entitled matter be, and the same hereby are, reversed, and the case remanded, with directions that the trial court enter judgment in accordance with the views here expressed." On July 15, 1898, the present action was begun. The complaint consists of two counts. A general demurrer was filed to each count, and it is claimed that the first count does not state facts sufficient to constitute a cause of action. But as all the points in the case arise upon the second count, and the two relate to the same transactions, it will not be necessary to consider the sufficiency of the first count. The second count sets forth the facts aforesaid, alleges the receipt of certain rents by the purchaser subsequent to the sale, and asks that the sale under the decree be set aside and annulled, that the plaintiff be restored to possession, and that he recover the rents and profits accrued to the defendant while the property was in his possession. On November 9, 1898, the court below entered in its minutes the following order: "Pursuant to a decree of the supreme court of California, upon defendant's appeal from the judgment in this action, it is ordered that the judgment docketed in favor of plaintiff against defendant, Julius Bandmann, upon the seventh day of December, 1895, for the sum of $3,574.34, deficiency due plaintiff and remaining unpaid and unsatisfied after applying and crediting towards the satisfaction of the decree all the proceeds of sale of the mortgaged premises and the balance of the rents in the hands of the receivers, be modified and reduced to the sum of $2,526.50, by deducting from said deficiency judgment the sum of $1,047.84 (said reduction being equivalent to $1,000 with interest thereon at the rate of seven per cent per annum from November 31, 1894, to said seventh day of December, 1895,) and interest on said sum of $1,047.84 at the rate of seven per cent per annum from December 7, 1895, to April 7, 1898, the date of filing *remittitur* from the supreme court, and that said reduction and modification be made *nunc pro tunc*, as of April 7, 1898." It does not appear whether this order was made upon notice to the plaintiff in the action, or by the court *ex parte*, or of its own motion. The answer in this action was not filed until after the making of this order, and in the answer the defendant

claims that the order was substantially a compliance by the court below with the order of the supreme court reversing the judgment; that the effect of it is to leave the sale unaffected, and that the plaintiff herein is concluded thereby. The mandate contained in the opinion of the court (*London etc. Bank* v. *Bandmann,* 120 Cal. 225 [1]), which is made part of the bill of exceptions in the case at bar, is as follows: "For the foregoing reasons the judgment and order are reversed and the cause remanded, with directions that the trial court enter judgment in accordance with the views here expressed." There was no appeal from any order, and the reference in the mandate to the "order" was probably a mere misprision.

The legal effect of the order of the supreme court was to reverse and vacate the judgment, and not merely to modify it. Upon a decision of the supreme court that there was material error in the action of the court below, that court may direct the character of the subsequent proceedings in the lower court, and its mandate will vary according to its views as to the proper course to be pursued. It may conclude not to reverse the judgment, but to modify it, by eliminating some portion, or by adding something to it, leaving the remaining part of the judgment below to stand affirmed and in full force and effect from the date of its original entry or rendition; or it may reverse the judgment, which means to entirely vacate it, and may remand the cause for a new trial; or if a new trial is not necessary, it may upon the reversal remand it, with directions to the lower court to enter a particular judgment. To reverse is "to overthrow; set aside; make void; annul; repeal; revoke: as, to reverse a judgment, sentence, or decree" (Century Dictionary), or, "to change to the contrary, or to a former condition" (Standard Dictionary). (To the same effect, see *Laithe* v. *McDonald,* 7 Kan. 254; Abbott's Law Dictionary; Anderson's Law Dictionary; Black's Law Dictionary; Bouvier's Law Dictionary.) The distinction between a reversal of a judgment and an affirmance with a modification is too marked and radical to justify us in disregarding it. The decision of the court as to the form of its judgment or mandate, and as to what shall be the future proceedings in the court below, is a part of its duty generally,

[1] 65 Am. St. Rep. 179.

and particularly under section 957 of the Code of Civil Procedure, and as such it is presumed to have received the same consideration as any other feature in the case. We are bound to assume that this court in this case acted advisedly and deliberately, and had good reason for ordering a reversal rather than a modification and affirmance. The part of the order directing the entry of a new judgment related solely to the proceedings after the reversal and the return of the case to the court below, and was not intended to, nor could it, change the reversal to a mere modification. Neither can the fact that it may now appear to us that the same result could have been reached by a modification justify this court in now changing the effect of the mandate.

The effect of an order of reversal upon the judgment reversed is not left in doubt by the decisions in this state. In *Reynolds* v. *Hosmer*, 45 Cal. 628, the court says: "When the supreme court reversed the judgment of the circuit court, . . . and its mandate was filed in the lower court, . . . the judgment was reversed, whether the lower court afterwards made any order conforming its judgment to that of the supreme court or not." In *Estate of Mitchell*, 126 Cal. 250, it is said: "When the order . . . was reversed, it no longer had any vitality or force, and the result was to leave the proceeding where it stood before that order was made." When a decree is reversed, it is vacated, and the matter stands "as though no decree had ever been made." (*Ashton* v. *Heydenfeldt*, 124 Cal. 17.) When a judgment is reversed, "it is as if never rendered." (*Raun* v. *Reynolds*, 18 Cal. 290.) When the order of the supreme court in the case of *London etc. Bank* v. *Bandmann*, 120 Cal. 220,[1] was made, reversing the judgment of the court below, that judgment was forthwith vacated, and until action was taken by the court below in pursuance of the mandate to enter another judgment in accordance with the opinion of the supreme court, there was no judgment in existence in the case.

The decisions are equally clear with regard to the effect of an order of reversal upon a sale or other proceeding had under the judgment reversed, during the pendency of the appeal. Except where the rights of third persons have inter-

---

[1] 65 Am. St. Rep. 179.

vened, the successful party upon the appeal may have the proceedings or sale vacated, either by motion in the action in the court below after the *remittitur* has been sent down or by independent action in any court of competent jurisdiction. He may also, in a proper case, have an action for damages as an alternative. (*Reynolds* v. *Hosmer,* 45 Cal. 628.) "A party obtaining through a judgment, before reversal, any advantage or benefit, must restore what he got to the other party, after the reversal." (*Reynolds* v. *Harris,* 14 Cal. 681.[1]) "The true condition of the sale—as valid or invalid— we consider to be this: The sale was valid at the time it was made; but the plaintiff in the execution having become the purchaser, it was liable to be set aside upon a reversal or modification of the judgment by this court, or by the court below upon the return of the case, upon motion." (*Johnson* v. *Lamping,* 34 Cal. 301.) "The rule is well settled in this state that, upon the reversal of a judgment, a sale to the plaintiff of the defendant's property for the satisfaction of the judgment in whole or in part will be set aside. The reason for this rule is, that, as the plaintiff's claim to have the property sold depends upon the judgment, the reversal of the judgment destroys this claim." (*Barnhart* v. *Edwards,* 128 Cal. 576; *Carpy* v. *Dowdell,* 131 Cal. 500.)

The case of *Jesup* v. *Bank,* 15 Wis. 604,[2] is cited as holding that a reversal does not vacate a sale to the plaintiff where the reversal was for an error in the amount of the judgment, which, being corrected, left a balance exceeding the price at the sale. The decision is as it is claimed to be, but the opinion is brief, and apparently no consideration is given to the meaning and effect of the terms used in a judicial mandate. We do not feel at liberty to follow it. As above stated, this court, when it reverses a judgment, is required, by section 957 of the Code of Civil Procedure, to determine what it will do toward the restitution of property sold under the erroneous decree. When it has made its determination of this matter, and decided to lay the foundation for a restitution, by reversing the judgment, instead of modifying it, as it could have done, the decision so made should not be disregarded, nor should it be subject to revision in a subsequent

[1] 76 Am. Dec. 459.    [2] 82 Am. Dec. 703.
CXXXIX. Cal.—20

case based on the mandate, and instituted for the purpose of obtaining the restitution so provided for.

It follows from these authorities that the plaintiff in this action is entitled to judgment, setting aside the sale, and for the recovery of the possession of the property, unless there is something in the effect of the minute order of the court below, purporting to have been made in pursuance of the mandate of the supreme court, which produces a different result. It is necessary, therefore, to consider the question of the validity and effect of that order.

That part of the order directing that it be made *nunc pro tunc*, as of April 7, 1898, is of no force. It is not claimed that the court did in fact make the order on that date, nor that it made any order or took any action in the case whatever at that time. A *nunc pro tunc* order cannot be made for the purpose of declaring that something was done which was not done. Its only office is to cause the record to show something done which was actually done, but which, by misprision or neglect, was not at the time entered in the record. It is as if the court, finding there had been a failure to enter an order actually made on a day previous, had directed the clerk to turn back to the page or part of the record containing the entries for that day and there enter the order in its proper place. For want of space, this cannot usually be done, and it ought not to be done, because for some purposes an order not entered has no effect, and therefore the record should show the date of the actual entry and also the date of theoretical entry,—that is, the date the order was actually made. And so the entry is written in the records of the day of actual entry, but the court directs that it have effect as an entry of the day· the original order was made. But there is no power in the court in any case to declare that an order shall be so entered that it shall have effect or shall appear to have been made on a previous day, where in fact it was not made on that day. The court cannot in this manner declare that a thing was done which might have been or should have been done, but which was not done. The order in question can be considered only as an order made on November 9, 1898.

The mandate of reversal did not authorize the trial court to modify the judgment in the manner attempted by this order.

"No modification of the judgment or decree directed by the appellate tribunal can be made by the trial court; no provision can be ingrafted upon it, nor can any be taken from it." (Elliott on Appellate Procedure, sec. 576; *Hughes's Appeal,* 90 Pa. St. 60; *Murrill* v. *Murrill,* 90 N. C. 122.) Where the supreme court directed the entry of a certain judgment, it was said, in *Argenti* v. *Sawyer,* 32 Cal. 415, that the lower court "had no authority to enter a different judgment. The duty of that court was simply to enter a judgment in conformity with the order of this court. That order is decisive of the character of the judgment to which the plaintiff is entitled. It is therefore unnecessary to consider whether the original judgment should have been ordered to be modified, or whether the plaintiff was entitled to interest upon interest, or whether the judgment of this court would have been modified if it had been asked for in proper time. . . . The judgment of this court concludes the parties, and it is now too late to change it; and certainly the district court has no authority to modify, change, or disregard it in any respect." In such a case the trial court "must enter the judgment directed, and the entry of a different judgment is void" (*Chafoin* v. *Rich,* 92 Cal. 473); and if the court had retried the case, and upon the new trial "had rendered a judgment, it would have been void." (*Heinlen* v. *Martin,* 59 Cal. 182. To the same effect, see *Argenti* v. *San Francisco,* 30 Cal. 467; *Will* v. *Sinkwitz,* 41 Cal. 588; *Keller* v. *Lewis,* 56 Cal. 469; *Green* v. *Springfield,* 130 Ill. 519.)

And, in any aspect, the order in question was without effect on the right of plaintiff to have the sale vacated. This court decided that the judgment below was too large, to the extent of one thousand dollars, with interest thereon at seven per cent per annum from March 31, 1894, and, upon the reversal, the court below was directed to enter judgment accordingly. This could not be done by modifying the previous judgment, for, as we have seen, that judgment was vacated by the reversal; it was "as if never rendered," and there was nothing in existence to modify. The deficiency judgment, entered in pursuance of the decree that was reversed, became a part of it, and the effect of the reversal was to vacate that judgment also. The order of November 9, 1898, therefore,

purports to modify something that did not then exist. As a modifying order, it was totally ineffectual.

Viewed as an independent order, it could have no effect as a foundation for the foreclosure sale. It does not purport to foreclose any mortgage, nor to order a sale of the land. It was not the entry of a new judgment in pursuance of the mandate. The case still stands as an action pending, with final judgment remaining to be entered.

And if it could be considered, by reason of its reference to the former decree, as a re-entry or resurrection of that decree, with the change indicated by the opinion of this court incorporated therein, still it would be effective only as the entry of a new judgment, which would act only from its date, and could give no validity to a sale made under the former decree. There was no power in the superior court to make it relate back to, and preserve vitality in, the original judgment which the supreme court had vacated. In view of these conclusions as to the effect of the order, it will be unnecessary to consider the question whether or not it is appealable.

It is apparent, therefore, that as the court below acted on the theory that the trial court in *London etc. Bank* v. *Bandmann*, 120 Cal. 220,[1] had power to disregard the mandate of the supreme court, and modify the previous judgment, allowing it, thus modified, to stand as valid from its date, instead of treating it as reversed, and therefore vacated, its judgment in this case was erroneous and must be reversed.

The complaint asks judgment for rents during the time the defendant has been in possession as purchaser under the former decree. The mortgage of Bandmann to defendant includes both the land and "the rents, issues, and profits thereof." The plaintiff, Cowdery, is a purchaser with notice of the mortgage. Where a mortgage includes rents and profits, the mortgagee, upon foreclosure, may, upon a proper showing of the insufficiency of the premises to pay the debt and expenses, have a receiver appointed to take possession, collect the rents accruing during the pendency of the suit, and apply them upon the debt. (*Scott* v. *Hotchkiss*, 115 Cal. 89; *Simpson* v. *Ferguson*, 112 Cal. 180;[2] Jones on Mortgages, 5th ed., secs. 669, 670.) A distinction is made in this state between

[1] 65 Am. St. Rep. 179.          [2] 53 Am. St. Rep. 201.

the rents and profits, as such, and the *corpus* of the growing crops, it being held that the statutory mode of mortgaging crops as chattels is exclusive, and that a clause mortgaging the rents, issues, and profits, in a mortgage not executed in the form prescribed for chattel mortgages, is ineffectual to give the mortgagee any lien on, or right to, the growing crops, even after the appointment of a receiver, as against third persons, who are in the position of purchasers for value with or without notice. (*Simpson* v. *Ferguson,* 112 Cal. 180; *Scott* v. *Hotchkiss,* 115 Cal. 89; *Bank of Woodland* v. *Heron,* 120 Cal. 614; *Modesto Bank* v. *Owens,* 121 Cal. 223; *Locke* v. *Klunkner,* 123 Cal. 235.) The reason for this distinction is, that the clause relating to rents, issues, and profits, so far as it could apply to growing crops, is absolutely void as to third persons, and there being no mortgage, pledge, or contract embracing the crops, they have the *status* of any other chattel not mortgaged, and the mortgagee cannot take them in a proceeding to enforce the mortgage. The same rule applies to any chattels included in a mortgage of realty, not executed as required for a mortgage of personalty. (*Bishop* v. *McKillican,* 124 Cal. 321.[1]) The same authorities recognize the right of the mortgagee lawfully in possession, either through a receiver appointed at his instance or in his own proper person, without the appointment of a receiver, to take the rents, issues, and profits accruing to him while so in possession, and apply them upon the mortgage debt, where the mortgage, as in this case, covers the rents, issues, and profits. It follows that the plaintiff is not entitled to recover the rents accruing during the possession of the defendant, or after the appointment of the receiver. His only remedy is to have them applied on the mortgage debt.

The judgment and order denying the plaintiff's motion for a new trial are reversed and the cause remanded for further proceedings in accordance with this opinion.

Angellotti, J., and Van Dyke, J., concurred.

Hearing in Bank denied.

Beatty, C. J., dissented from the order denying a hearing in Bank.

---

[1] 71 Am. St. Rep. 68.