Filed 3/28/23 Antonopoulos v. Mid-Century Insurance CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| TED ANTONOPOULOS et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>MID-CENTURY INSURANCE COMPANY,<br><br>Defendant and Respondent. | A164243<br><br>(Sonoma County<br>Super. Ct. No. SCV263268) |

This is the second appeal in this case, which began when plaintiffs and appellants Ted Antonopoulos and Susie Antonopoulos (plaintiffs), who lost their home in a fire, sued their insurer, respondent Mid-Century Insurance Company (Mid-Century). Both parties filed cross-motions for summary judgment or summary adjudication, and the trial court granted summary adjudication for plaintiffs, following which the parties agreed to a stipulated judgment, putting the case in a posture where it could be appealed.

As pertinent here, the parties also entered into a settlement agreement that provided eventualities in which plaintiffs would be entitled to high and low amounts—$2 million and $250,000 respectively—the low amount to be their recovery if Mid-Century appealed and "obtains a reversal of the stipulated judgment." Mid-Century did appeal, and in a published opinion we "affirmed in part and reversed in part," with a disposition that read as

1

follows: "The order denying summary judgment or summary adjudication for Mid-Century is affirmed. The order granting summary adjudication for plaintiffs on the issue of Mid-Century's duty to cover their loss is reversed. The stipulated judgment for plaintiffs shall be set aside. Each side shall bear its own costs on appeal." (*Antonopoulos v. Mid-Century Ins. Co.* (2021) 63 Cal.App.5th 580, 603 (*Antonopoulos I*.)

Following the appeal, plaintiffs filed a motion to enforce the settlement agreement and seeking their entitlement to the high amount, $2 million. The trial court granted the motion but held that plaintiffs were entitled to the low amount, $250,000. Plaintiffs appeal, contending that the trial court got it wrong, that it "misconstrued the disposition in" our opinion and "what 'set aside' means." We conclude otherwise, that the trial court got it right. We thus affirm.

## BACKGROUND

### The General Setting

We distilled the essential background in the introductory paragraphs of our earlier opinion: "Plaintiffs Ted and Susie Antonopoulos lost their Santa Rosa home in the 2017 Tubbs fire. They promptly submitted a claim under their homeowners insurance policy to defendant Mid-Century . . . , which denied the claim on the ground that the policy had been canceled for nonpayment of premium six days before the fire. Plaintiffs immediately paid the past due premium, and the policy was reinstated. Mid-Century continued to deny the claim, however, taking the position that reinstatement did not retroactively cover the loss that occurred when the policy was out of force.

"Plaintiffs sued for breach of contract and breach of the implied covenant of good faith and fair dealing, and the parties filed cross-motions for

2

summary judgment or summary adjudication.  Mid-Century argued the undisputed facts showed it did not owe plaintiffs a duty to cover their loss and thus did not breach the insurance contract or the implied covenant of good faith and fair dealing and could not be liable for exemplary damages.  Plaintiffs argued the undisputed facts showed that Mid-Century reinstated the policy without a lapse in coverage and thus owed them a duty to cover their loss.  The trial court agreed with plaintiffs, concluding the undisputed facts showed that Mid-Century waived forfeiture of the policy and reinstatement was retroactive with no lapse in coverage.  Accordingly, the court granted summary adjudication for plaintiffs on the issue of Mid-Century's duty to provide coverage and denied Mid-Century's motion in its entirety.  Pursuant to a stipulation by the parties, judgment was then entered for plaintiffs."  (*Antonopoulos I*, *supra*, 63 Cal.App.5th at pp. 583–584.)

### The Settlement

Following the trial court's rulings on the motions, and before the appeal was taken, the parties entered into a comprehensive 16-page settlement agreement, signed by plaintiffs, Mid-Century, and their attorneys.  The last paragraph of the recitals provided that:  "The purpose of this Agreement is to bring an end to trial court proceedings in the Action, reserving rights to appeal and to petition the Supreme Court, as between Plaintiffs and Defendant, and to settle and compromise all claims, disputes, controversies, and liabilities existing between Plaintiffs and Defendant on the terms set forth herein, and to avoid the further expense of the burdensome, protracted and costly trial which would be involved in prosecuting and defending the Action in the trial court, without in any way acknowledging any liability."

3

Then, at page 2, under paragraph 1.A. the settlement agreement provided this: "Defendant shall have the right, but not the obligation, to pursue an appeal from the Stipulated Judgment. In the event Defendant does not pursue an appeal, or pursues an appeal and does not obtain a reversal of the Stipulated Judgment, Defendant shall pay to Plaintiffs the sum of two million dollars and zero cents ($2,000,000.00) and Plaintiffs shall immediately thereafter file an Acknowledgement of Satisfaction of Judgment, in full. Said payment shall be made within ten (10) days after the expiration of the time to file a Notice of Appeal, if no appeal is taken or within ten (10) days after the Court of Appeal issues the remittitur if an appeal is taken. In the event Defendant obtains a reversal of the Stipulated Judgment, Defendant shall pay to Plaintiffs the sum of two hundred fifty thousand dollars and zero cents ($250,000.00), said payment to be made within ten (10) days after the Court of Appeal issues the remittitur."[1]

---

[1] The Stipulated Judgment referred to in the Settlement Agreement was attached to the Agreement, where the parties stipulated among other things, as follows:

"Plaintiffs and Defendant, by and through their counsel, hereby stipulate to the dismissal of the Second Cause of Action for Breach of the Implied Covenant of Good Faith and Fair Dealing and hereby stipulate to the entry of a Judgment in favor of Plaintiffs and against Defendant in the sum of one million, one hundred eleven thousand five hundred dollars and zero cents ($1,111,500.00), with each party to bear its own costs and attorneys' fees.

"WHEREUPON, after consideration of all matters affecting the Settlement, and the stipulation of the parties to dismiss the Second Cause of Action for Breach of the Implied Covenant of Good Faith and Fair Dealing and to enter judgment in favor of Plaintiffs, it is ordered, adjudged and decreed that Plaintiffs, Ted Antonopoulos and Susie Antonopoulos, jointly, shall and do have and recover a judgment from Defendant Mid-Century Insurance Company in the total amount of one million, one hundred eleven thousand five hundred dollars and zero cents ($1,111,500.00), with each party

4

The Settlement Agreement contained an integration clause, a waiver of Civil Code section 1654 regarding ambiguities and uncertainties, and a choice of law provision. The Settlement Agreement did not limit or define the issues that could be appealed, nor did it specially define or limit the term "reversal."

**The Appeal**

Mid-Century appealed, and on April 27, 2021, we filed our opinion. Our introductory remarks began with the distilled version of facts quoted above. The next two paragraphs then described the appeal, and our holding:

"Mid-Century appeals, asserting two fundamental arguments: (1) the loss-in-progress rule precludes coverage for a known loss, so Mid-Century could not, as a matter of law, reinstate the policy retroactively to provide coverage for the loss that occurred while the policy was out of force; and (2) even if Mid-Century *could* have reinstated the policy without a lapse in coverage, the undisputed facts show it did not do so and that it reinstated the policy subject to a lapse of nine days that included the date plaintiffs lost their home."

"We reject Mid-Century's first argument. Its second argument hinges on its intent when it reinstated the policy, and as to this, there exists a triable issue of material fact. Thus, we conclude Mid-Century's motion was properly denied but plaintiffs' motion was improperly granted. We therefore affirm in part and reverse in part." (*Antonopoulos I*, *supra*, 63 Cal.App.5th at p. 584.)

From there we went on for some 20 pages analyzing the matter, in the course of which we described the dispositive issue for Mid-Century this way:

---

to bear its own costs and attorneys' fees. This stipulated judgment is made without prejudice to the parties' right to be heard on appeal. [Citations.]"

5

"Having concluded that Mid-Century *could* have retroactively reinstated the policy knowing plaintiffs suffered a loss during the period during the period the policy was out of force, the question becomes whether Mid-Century did in fact do so.  The trial court concluded from the evidence that it could 'only be reasonably inferred that Mid-Century had decided to cover plaintiffs' loss.'  As to such inference, we have a number of observations.  First, in ruling on a summary adjudication or judgment motion, the trial court must view the evidence and inferences drawn from it in the light most favorable to the opposing party. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.)  Second, 'summary judgment shall not be granted by the court based on inferences reasonably deducible from the evidence if contradicted by other inferences or evidence that raise a triable issue as to any material fact.' (Code Civ. Proc., § 437c, subd. (c).)  And third, on appeal, we must draw all reasonable inferences in favor of the party against whom summary adjudication was entered. (*Ragland v. U.S. National Assn.* (2012) 209 Cal.App.4th 182, 197.)  [¶]  "With these principles in mind, we reach a different conclusion than the trial court—that the evidence and reasonable inferences raise a triable issue as to whether Mid-Century intended to retroactively reinstate the policy without a lapse.  This precludes summary adjudication for Mid-Century—and for plaintiffs." (*Antonopoulos v. Mid Century Ins. Co.*, *supra*, 63 Cal.App.5th at p. 599.)

Following that, we discussed the conflicting inferences that could be drawn from the evidence submitted on the issue of waiver and Mid-Century's intent, (*Antonopoulos I*, *supra,* 63 Cal.App.5th at pp. 600–602), and then set forth our disposition quoted above: "The order denying summary judgment or summary adjudication for Mid-Century is affirmed.  The order granting summary adjudication for plaintiffs on the issue of Mid-Century's duty to

cover their loss is reversed.  The stipulated judgment for plaintiffs shall be set aside.  Each side shall bear its own costs on appeal." (*Antonopoulos I*, *supra*, 63 Cal.App.5th at p. 603.)

### Proceedings Following Our Opinion

On April 28, the day after our opinion was filed, counsel for Mid-Century emailed plaintiffs' counsel stating that "by the terms of the settlement agreement, my client owes plaintiffs $250,000.00."

Plaintiffs' counsel responded that based on the disposition in *Antonopolous I*, the settlement agreement required a payment of $2,000,000.

On June 1, Mid-Century's counsel sent a letter enclosing a check for $250,000, stating it was in full compliance with the settlement agreement.

By letter of June 3, plaintiffs' counsel returned the check.

Our remittitur issued on June 28, and on July 8, plaintiffs' counsel sent an email to Mid-Century's counsel that 10 days had passed since the issuance of the remittitur, and that Mid-Century would be in breach of the settlement agreement if payment in the amount of $2,000,000 was not made by the morning of July 9.

Mid-Century did not make the payment.

On July 13, plaintiffs filed a motion to enforce the settlement agreement under Code of Civil Procedure section 664.6  The motion argued that Mid-Century had not obtained a reversal of the Stipulated Judgment, essentially arguing that the parties had intended for the low amount to be paid only if Mid-Century received a favorable ruling on the loss-in-progress rule.  The motion was accompanied by a short, 12-paragraph declaration of plaintiffs' counsel that authenticated seven exhibits.  The declaration did not contain any extrinsic evidence of what the parties discussed or intended beyond what was expressed in the settlement agreement.  And the

7

declaration did not mention any evidence regarding any communications about, or negotiation of, the terms of the settlement agreement, much less anything that would suggest the parties agreed to limit Mid-Century's right to appeal to the sole issue of the application of the loss-in-progress rule.

Mid-Century filed opposition, plaintiffs a reply, and the motion came on for hearing on September 17, before the Honorable Gary Nadler, who had issued a tentative ruling in favor of Mid-Century. The hearing featured vigorous argument by counsel for plaintiffs, with spirited colloquy between him and Judge Nadler. And at the conclusion of the hearing, Judge Nadler took the matter under submission, stating he wanted "to consider what [plaintiffs' counsel] argued."

On September 29, Judge Nadler filed his ruling on submitted matter. It was a comprehensive nine-page order that set forth at length the setting before him and his analysis, following which his ruling ended with these four paragraphs:

"Defendant is persuasive that the Settlement's use of the expression 'reversal' is equivalent to the use of 'set aside' in the decision of the Court of Appeal. Given the state of the record, to determine otherwise would be a matter of form over substance. Further, the terms appear to have the same meaning and use in California law and in the context of this case; the effect of setting aside the Stipulated Judgment as a result of Defendant's appeal is in effect equivalent to a reversal of it.

"Defendant's appeal challenged the order denying its motion for summary judgment or summary adjudication, and the order granting Plaintiffs' motion for summary adjudication in Plaintiffs' favor on the dispositive issue of Defendant's duty. Overall, the object of the appeal, and the Stipulation, was the Stipulated Judgment in Plaintiffs' favor. The Court

of Appeal's decision essentially put the parties in the position existing *prior* to the agreement leading to a judgment in favor of Plaintiffs. In other words, Defendant was no longer subject to a judgment in favor of Plaintiffs in the amount of $1,111,500.00. Defendant was objectively successful as a result of the appeal. The appellate court expressly stated that '[t]he order granting summary adjudication for plaintiffs on the issue of Mid-Century's duty to cover their loss is reversed. The stipulated judgment for plaintiffs shall be set aside.' There was no longer a judgment in favor of Plaintiffs and both sides are left facing trial of the dispositive issues.

"As a result, pursuant to the Settlement, although Plaintiffs are entitled to entry of judgment in their favor, the judgment amount must be the 'low' figure of $250,000. The court therefore grants the motion to the extent that Plaintiffs are entitled to entry of judgment pursuant to the Settlement Agreement, but denies the motion to the extent that Plaintiffs seek a judgment for the 'high' about of $2,000,000.00.

"IT IS SO ORDERED."

On December 9, Judge Nadler filed an order and judgment in accordance with his ruling, from which plaintiffs filed a timely appeal.

## DISCUSSION

The issue here is straightforward. As Judge Nadler put it, "The dispute here requires interpretation of the contract's terms, specifically whether the decision of the Court of Appeal amounts to a 'reversal' of the Stipulated Judgment under the Settlement terms." Judge Nadler decided it did, based on his reading of the settlement agreement, and thus our review is de novo. (*Canaan Taiwanese Christian Church v. All World Mission Ministries* (2012) 211 Cal.App.4th 1115, 1123–1124.)

9

As quoted above, plaintiffs contend that Judge Nadler erred, that he "misconstrued the disposition in" our opinion and "what 'set aside' means."

We disagree.

*Cowdery v. London & San Francisco Bank* (1903) 139 Cal. 298 (*Cowdery*), disapproved on other grounds in *Snapp v. State Farm Fire & Casualty Co.* (1964) 60 Cal.2d 816, 819, is persuasive. The issue there arose in the setting where the Supreme Court had entered an order holding that "the judgment and order . . . are reversed, and the case remanded, with directions that the trial court enter judgment in accordance with the views here expressed." Describing the court's alternatives when it finds an error, it said that among the things it could do was to "reverse the judgment, which means to entirely vacate it," adding this: "To reverse is 'to overthrow; set aside; make void; annul; repeal; revoke: as, to reverse a judgment, sentence, or decree' (Century Dictionary), or, 'to change to the contrary, or to a former condition' (Standard Dictionary). (To the same effect, see *Laithe v. McDonald* [(1871)] 7 Kan. 254; Abbott's Law Dictionary; Anderson's Law Dictionary; Black's Law Dictionary; Bouvier's Law Dictionary.)" (*Cowdery*, *supra*, 139 Cal. at p. 303.)

The effect of the reversal, *Cowdery* said, was to "set aside" the sale at issue. Likewise here. The effect of our opinion was to "set aside" the Stipulated Judgment.

Appellants describe *Cowdery* as relying on an "obscure and now largely forgotten" dictionary, and as setting out an "archaic definition." But plaintiffs cite nothing in claimed support of their criticism,[2] and legal

---

[2] Not only is plaintiffs' age-based criticism of *Cowdery* unsupported, the case has been cited over 80 times, including well into the 21st century. (See, for example, *Pineda v. Williams-Sonoma Stores, Inc.* (2011) 51 Cal.4th 524, 529, fn. 5.)

dictionaries, including some cited in *Cowdery*, have the same or similar definition of reverse today.  For example:

- American Heritage Dictionary of the English Language (5th ed. 2016) reverse:  "*Law*:  to change or set aside."
- Black's Law Dictionary (11th ed. 2019): "Reverse:  [t]o overturn (a judgment or ruling), esp. on appeal";
- www.dictionary.com—reverse:  "to revoke or annul (a decree, judgment, etc.)";
- www.merriam-webster.com—reverse:  "2.  NEGATE, UNDO: such as a:  to overthrow, set aside, or make void (a legal decision) by a contrary decision."

A search of the Merriam-Webster Dictionary of Synonyms and Antonyms reveals that the first listed synonym for reverse is "set aside," right before "change" and "undo."  Similarly, the first three listed synonyms for "set aside" are "overrule, overturn, and reverse." (Merriam-Webster Dictionary of Synonyms and Antonyms <http://merriam-webster.com>).

In addition to the above, two more items are worth noting.  The first is our own description of our holding, where in our introductory description we said "we . . . affirm in part and reverse in part." (*Antonopoulos I*, *supra*, 63 Cal.App.5th at p.584.)  The second is the official description of our opinion by the Reporter of Decisions, which is this:  "The Court of Appeal affirmed in part and reversed in part.  The court held that the trial court properly denied the insurer's summary judgment motion but improperly granted the insureds' summary adjudication motion. . . ." (*Antonopoulos I*, *supra*, 63 Cal.App.5th at p.580.)

11

The result of our opinion was a reversal of the judgment in plaintiffs' favor. Not only does the word "reverse" appear several times in our opinion, in addition we said that "we conclude . . . plaintiffs' motion was improperly granted" (*Antonopoulos I*, *supra,* 63 Cal.App.5th at p.584); that "there exists a triable issue of material fact as to whether Mid-Century intended to waive forfeiture of the policy for nonpayment of premium and cover the loss that occurred during the policy's lapse . . . [this] means summary adjudication for plaintiffs was improperly granted" (*id*. at pp. 584, 594); and that "The order granting summary adjudication for plaintiffs on the issue of Mid-Century's duty to cover their loss is reversed." (*Id*. at p. 603.)

Arguing to the contrary—and referring to their counsel's argument at the hearing—plaintiffs' brief asserts that "This Court certainly knew what it was doing in the disposition, having a better appreciation of its powers than anyone else." As plaintiffs' counsel put it at oral argument in the trial court: "By saying 'set aside' means 'reversal,' you have to ignore the fact that the Court of Appeal [assiduously] used the word 'reverse,' 'reverse,' 'reverse,' and then in the very last sentence of their disposition they decide to get out the thesaurus and throw in 'set aside.' " We do not understand the efficacy of the argument that after referring to "reverse," we "got out the thesaurus" and "threw in" set aside, as though that was something different. As the Oxford Language Dictionary describes, "a thesaurus is a book or electronic resource that lists words in groups of synonyms and related concepts." (Oxford Languages <http://languages.oup.com/google-dictionary.com>).

As Judge Nadler noted, the effect of our opinion was to place the parties in the same position as if plaintiffs' motion for summary adjudication had not been granted. While it is true we rejected one of Mid-Century's legal arguments (based on the loss-in-progress rule) that it did not have a duty to

cover plaintiffs' claim, that ruling was not dispositive as to the issue of Mid-Century's duty to cover the loss, and plaintiffs' claims would have remained to be tried. As we explained, even without reliance on the loss-in-progress rule, Mid-Century could still prevail at trial on the issue of duty by establishing that it had not knowingly and intentionally waived the lapse of coverage. In short, the effect of our decision was that the Stipulated Judgment no longer existed and appellants would have to try their case to a jury. That is a reversal.

Plaintiffs assert—blithely, as Mid-Century describes it—that based on our opinion they would definitely win at trial. Maybe. Maybe not. The fact is that after our opinion, the burden was on them to go to trial and do so.

Superimposed on the above is Civil Code section 3528, one of the maxims of jurisprudence, which provides that "The law respects form less than substance." The substance of our holding was a reversal. (See *Schisler v. Mitchell* (1959) 174 Cal.App.2d 27, 29 [construing effect of judgment, court noted that law regards the substance of words used rather than their form]; *Hudson v. Superior Court* (2017) 7 Cal.App.5th 999, 1011, and cases there collected [" 'trial court may disregard caption of a motion and instead treat it in accordance with the relief it requests' "].)

Plaintiffs never actually define what "set aside" might mean in the appellate context that is different from a reversal. And they certainly don't explain how "set aside" is the same as the federal concept of "vacatur," "a partial reversal," "a modification," or a trial court order granting relief from a default judgment, the various analogies to which they point.

As to plaintiffs' analogy to federal law it, unlike that of California, specifically provides reviewing courts with the power to "affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully

brought before it for review. . . ." (28 U.S.C.S. § 2106.) By contrast, Code of Civil Procedure section 43, provides that: "The Supreme Court, and the courts of appeal, may affirm, reverse, or modify any judgment or order appealed from, and may direct the proper judgment or order to be entered, or direct a new trial or further proceedings to be had."

Citing no authority—indeed, disregarding binding authority to the contrary—plaintiffs' claims that "set aside" is more closely synonymous with "vacatur" as used in federal jurisprudence. Vacatur is an equitable disposition founded in the Constitutional requirement that there be a case in controversy and that "those who have been prevented from obtaining the review to which they are entitled [are] not . . . treated as if there had been a review." (*Camreta v. Greene* (2011) 563 U.S. 692, 712, quoting *U.S. v. Munsingwear, Inc.* (1950) 340 U.S. 36, 39 [vacatur used when case is rendered moot while pending for review].)

In addition to their argument that "set aside" is synonymous with "vacatur," plaintiffs argue that "set aside" "equates to a 'partial reversal' or 'modification.' " But vacatur, partial reversal, and modification are all different from each other, so it is inherently contradictory to conclude that "set aside" is synonymous with each of them.

Similarly irrelevant here are trial court motions for relief under Code of Civil Procedure section 473. First, they are a trial court procedure and do not involve an appellate court's disposition. Second, they involve the trial court granting relief from dismissals, judgments, or orders that have been obtained due to the parties' or their attorneys' "mistake, inadvertence, surprise, or excusable neglect" (Code Civ. Proc, § 473, subd (b)), not on the merits.

Finally, apparently acknowledging that we did not use the terms "partial reversal" or "modification" anywhere in our opinion, plaintiffs

14

speculate that such dispositions can be inferred here by the fact that the court did not award costs to Mid-Century as the prevailing party. But this argument ignores California Rules of Court, rule 8.278(a)(5), which allows the court to find that it is in the interests of justice for each side to bear their own costs on appeal. (*Lopez v. The Hillshire Brands Co.* (2019) 41 Cal.App.5th 679, 689–690 [where each party prevailed on their part of the judgment that was affirmed].)

Plaintiffs have a brief second argument that Judge Nadler committed "reversible error in not considering Mid-Century's . . . opening brief as extrinsic evidence and not construing an ambiguity in [plaintiffs'] favor." The argument is apparently based on the last paragraph of plaintiffs' counsel's declaration in support of the motion, where counsel testified as follows: "12. In its Opening Brief, Mid-Century stated that it was 'seeking reversal of the stipulated judgment.' A true and correct [copy] of that brief is attached hereto as **Exhibit G.**"

Thus, as plaintiffs' brief puts it, "A court may go beyond the four corners of the agreement to determine the intent of the parties if it finds that the language is ambiguous. Plaintiffs asked the trial court to do this if it was inclined to conclude that the settlement agreement was 'reasonably susceptible' to Mid-Century's interpretation that 'reversal' included 'set aside.' *Brown v. Goldstein* (2019) 34 Cal.App.5th 418, 432–433. Plaintiffs argued that at best for Mid-Century, the settlement agreement was ambiguous on this question and that a consideration of limited extrinsic evidence (i.e., Mid-Century's Opening Appellate Brief) would resolve the ambiguity in plaintiffs' favor. [Citation.] . . . [¶] "The trial court overruled Mid-Century's objection to consideration of its opening brief in *Antonopoulos I.* However, the trial court simply stated that the objections 'and the evidence

15

they address do not alter the outcome of the motion.  [Citation.]  The trial court does not mention the brief again."

Where the trial court's interpretation does not turn on " 'the credibility of extrinsic evidence,' " the interpretation of the settlement agreement is " 'subject to de novo review.' " (*People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2003) 107 Cal.App.4th 516, 520.)  That includes the determination whether the settlement agreement was ambiguous, that is, " 'reasonably susceptible' " to two different meanings.  (*Winet v. Price* (1992) 4 Cal.App.4th 1159, 1165.)  In his words, Judge Nadler ruled that the so-called extrinsic evidence did not "alter the outcome."  And he certainly did not find any ambiguity.

## DISPOSITION

The judgment is affirmed.  Mid-Century shall recover its costs on appeal.

_____
Richman, J.

We concur:

_____
Stewart, P.J.

_____
Miller, J.

*Antonopoulos v. Mid-Century Insurance Company* (A164243)